[No. 2450.   Decided April 29, 1897.]

A. S. GRAHAM, *Respondent*, v. JACOB McCOY *et ux.*, *Appellants.*

CONTRACTS — CONSTRUCTION — BREACH — MEASURE OF DAMAGES.

Where one engaged in the logging business has become indebted for money and supplies to a lumber company to which he furnished logs, and, to secure said indebtedness and any further indebtedness to a specified amount, a mortgage is given to the

lumber company, under an agreement that further advances shall be made to the mortgagor from time to time during a period of two years for the purpose of carrying on his logging business, which the said mortgagor is, upon demand, to repay to said company, the contract between the parties must be construed as imposing an obligation on the lumber company to make advances for the full period of two years from date of contract.

The measure of damages for the breach of a contract to advance money and supplies for the carrying on of a logging business, for a given period, when it is known by the obligor that it is impossible for the obligee to procure the advances elsewhere, is the value of the logs that could have been put into market, less the expense of cutting and furnishing them.

Appeal from Superior Court, Wahkiakum County.— Hon. A. L. MILLER, Judge. Reversed.

*N. H. Bloomfield,* and *S. D. Dennis,* for appellants.
*L. A. McNary,* and *J. Bruce Polwarth,* for respondent.

The opinion of the court was delivered by

REAVIS, J.—Suit to foreclose a mortgage. The complaint alleges substantially that on the 1st of October, 1891, the defendant Jacob McCoy made an agreement with the North Pacific Lumber Company, a corporation of Portland, Oregon, by the terms of which agreement McCoy was at that date found to be indebted to the lumber company in the sum of $8,600; and by the terms of the agreement the lumber company was, during the term of two years commencing at that date, to make advances of certain moneys to McCoy in his then business of logging in Wahkiakum county, not exceeding at any one time, including the indebtedness already due, the sum of $12,000, which amount McCoy was, upon demand, to repay to the lumber company, with interest at the rate of eight per cent. from date when made until paid; and by the terms of the agreement it was the purpose and intent

to secure the indebtedness already existing, together with
future advances, by a mortgage upon the real property
then owned by McCoy and his wife. It is further alleged
that, of even date with the agreement above stated and
for the purpose of securing payment of the $8,600 and
future advances aforesaid, McCoy and wife executed and
delivered their mortgage; that on the 6th of October,
1892, McCoy paid all moneys owing by him to the lum-
ber company on the mortgage, including advances to that
date made by the company, except $5,756, which amount,
for a valuable consideration, with the consent of McCoy,
together with the mortgage and agreement and all rights
thereunder, was sold and assigned to L. Soldern, who
owned and held the mortgage and the debt secured there-
by until the assignment to plaintiff; that between the 6th
of October, 1892, and the 24th of May, 1893, while Sold-
ern was the owner, McCoy paid the sum of $3,446.21,
leaving a balance of $2,310.21, and interest on that
amount at the rate of eight per cent. per annum from that
date; that that sum together with the mortgage and all
rights thereunder was sold for a valuable consideration
to plaintiff on the 31st of May, 1895, who immediately
thereafter instituted this suit. The mortgage is set out
as an exhibit to the complaint and is in the usual form,
that Jacob McCoy and wife, in consideration of $12,000
in hand paid by the North Pacific Lumber Company,
mortgage the premises, describing them. The declaration
is then made that this conveyance is intended as a mort-
gage to secure the payment of the sum of $12,000, in
accordance with the agreement of the parties, which is as
follows:

" That the said Jacob McCoy is at the date hereof in-
debted to the said North Pacific Lumber Company in
about the sum of $8,600.00, and the said North Pacific

Lumber Company is proposing during the term of two years commencing at this date to and from time to time make advances of money and supplies to the said Jacob McCoy in his logging business, not exceeding at any one time, including the indebtedness above referred to, the sum of $12,000.00, and that the said McCoy is, upon demand, to repay the same to the said company. . . . and it is the purpose and intent of this mortgage to secure the debt now owing by said McCoy to said company, and any balance of account that may during two years from the date hereof be owing by the said McCoy to said company, which balance of account hereby secured is not to exceed the sum of $12,000.00."

The prayer is for foreclosure of this mortgage and for a sale. The answer of defendants, after a number of denials which it is not material to notice here, set up by way of separate answer and counterclaim:

"That at the time of the execution of said mortgage and for a long time prior thereto, the defendants were and had been engaged in cutting and getting out logs upon the lands described in said mortgage, in Wahkiakum county, Washington, and had been selling and delivering logs to the said North Pacific Lumber Company and receiving from it supplies and money with which to carry on the business of getting out logs for the market; that being indebted to said North Pacific Lumber Company in the sum of $8,600.00 on October 1, 1891, and the said North Pacific Lumber Company promised and agreed to provide the defendants with money and supplies to carry on said logging business, for the period of two years thereafter, to the extent of such sum as should not at any one time exceed a balance of $12,000.00, and with and upon that condition and promise, and not otherwise, said mortgage was made and delivered.

"That after the making of said mortgage, the defendants, at great expense, constructed roads and other appliances to carry on said business, which they would not have done had not the said North Pacific Lumber Company promised and agreed as in said mortgage stated, to

supply them with said sum of money and supplies, and in good faith relying upon said promises and agreements, proceeded to get out logs for delivery to said North Pacific Lumber Company, and at all times were ready and willing to get out said logs.

"That before the expiration of two years after the making of said mortgage, to wit: on the — day of January, 1893, after the said Soldern received an assignment of said mortgage, or claimed to have received the same, the defendants made repeated demands upon the said Soldern and the North Pacific Lumber Company for supplies and money with which to carry on said business of getting out logs and at times when said defendants were not indebted upon said mortgage in the sum of a balance of $12,000.00, but when they were indebted in a balance greatly less than that sum; but the said Soldern and the said North Pacific Lumber Company refused to advance said moneys or to provide said supplies or any money or supplies, and the defendants, having no other means of procuring said money or supplies, having encumbered all of their said property to said North Pacific Lumber Company in said mortgage, were compelled to discharge all of the men hired and engaged in said logging business, and to shut down and discontinue their work of getting out logs, to the damage of defendants in the sum of four thousand dollars ($4,000.00)."

The defendants also allege that the mortgage was executed in consideration of the agreement made between the lumber company and Jacob McCoy, by the terms of which the company was to furnish McCoy money and supplies for two years in the logging business and purchase logs at the rate of $5.25 per thousand feet. Plaintiff replied, denying many of the allegations of the affirmative matter in the answer, but admitting as follows:

"That at the time of the execution of the said mortgage and for some time prior thereto, the said defendant Jacob McCoy was and had been engaged in cutting and getting out logs upon the lands described in the said mort-

gage in Wahkiakum county, Washington, and had been
selling and delivering logs to the said North Pacific Lum-
ber Company, and receiving from it supplies and money
with which to carry on the business of getting out logs
for the market; and admits that the said North Pacific
Lumber Company, being on October 1st, 1891, the credi-
tor of the said Jacob McCoy in the sum of $8,600.00,
then promised and agreed to provide the said defendant
Jacob McCoy with money and supplies to carry on said
logging business for the period of two years thereafter to
the extent of such sum as should not at any one time ex-
ceed a balance of $12,000.00, but denies that said mort-
gage was made or delivered with or upon that condition
or promise and not otherwise."

Plaintiff moved to strike the counterclaim, which the
superior court denied, and that court, deeming the advice
of a jury proper in the trial of the cause, impaneled one
and submitted the following special findings to them,
which with the answers are here given:

" 1.   Was any demand made by McCoy upon the North
Pacific Lumber Company or Soldern for money or sup-
plies during the two years from October 1, 1892?   (Yes.)
" 2.   Did the said lumber company or Soldern fail or
refuse to furnish money or supplies to McCoy during the
said two years upon demand from McCoy?   (Yes.)
" 3.   If you find that the mill company or Soldern
failed or refused to furnish money or supplies upon de-
mand from McCoy during the said two years without Mc-
Coy's fault or consent, then estimate the actual damages
which naturally resulted to him by reason of such neglect
and failure and give your figures.   ($3,000.00.)"

The court adopted the findings of the jury and found,
among others, findings numbered 5 and 6 as follows:

" That the agreed price which defendants were to re-
ceive for the logs was the sum of $5.25 per thousand feet.
" That defendants, after giving the mortgage, con-
structed logways and made other preparations for logging
to the extent and value of about $1,000.00; that said log-

ways and similar preparations were made and used for
about a year and a half before plaintiff refused to furnish
defendants money and supplies."

No exceptions were taken to any of the findings of fact,
and the cause is here for review on the facts disclosed in
the pleadings and as found by the court.

The superior court determined that the mortgage set
out by plaintiff was executed solely for the purpose of se-
curing the $8,600 due the lumber company when it was
executed, and to cover such advances as might be made
during the two years following, not exceeding the sum of
$12,000 at any one time, and that, under the mortgage,
the mortgagee or its assignees were not bound to advance
moneys or supplies to defendants to enable them to carry
on their logging business, and that it did not entitle them
to recover as damages profits which defendants might have
made out of the logging business had the plaintiff or its
assigns advanced the necessary funds to carry on the log-
ging business; and decreed the foreclosure of the mort-
gage for the balance due thereon.

It is stated by defendants in their brief, and uncontra-
dicted by plaintiff, that the premises described in the
mortgage is the homestead of defendants.

1.   The superior court rules that furnishing money and
supplies was optional with the North Pacific Lumber Com-
pany, and that any damages which the defendant sustained
because of failure to furnish money or supplies could not
be set up against the amount due on the mortgage. The
defendants insist that the mortgage is equally binding
upon both parties and that so long as both parties comply
with the terms it is equally obligatory upon them. The
plaintiff also insists that, under the terms of the mortgage,
the words, " upon demand repay the same to the com-
pany," are controlling, and that the whole amount was

due at any time on demand at the pleasure of the lumber
company. Defendants contend that the words, " the term
of two years," are controlling in the mortgage, and that
no payment could be enforced so long as the terms of the
contract were performed by defendants until two years
had 'elapsed. After careful examination of the mortgage
itself, we have concluded to inquire into the circumstances
surrounding its execution and the relations of the parties
to each other, for its real meaning.

At the time of its execution, and for some time prior
thereto, the North Pacific Lumber Company was purchas-
ing logs from Jacob McCoy, who was and had been en-
gaged in the logging business, taking his logs from the
premises described in the mortgage, and furnishing them
to the lumber company, who had been at the same time
advancing moneys and supplies to him, when on the 1st of
October, 1891, the respective parties made a contract be-
tween themselves, the terms of which are substantially
agreed upon here. These terms, as stated in the reply of
the plaintiff, show that it was in contemplation of both
parties that McCoy should carry on his logging business
for two years and that the lumber company would pur-
chase logs from him and would supply him with the
necessary money and supplies to carry on his business
properly. For a considerable time thereafter both parties
carried out the terms of this agreement, the lumber com-
pany furnishing all necessary money and supplies and Mc-
Coy successfully prosecuting his logging business, so much
so that he materially reduced the amount of his indebted-
ness to the lumber company. Defendants also had ex-
pended a considerable sum of money in improving the
facilities for getting out logs, as found by the court. Af-
ter the assignment of the mortgage to Soldern by the
lumber company, the amount due was still further reduced

by the defendants, and there can be no reasonable doubt but had the money and supplies been furnished the defendants under the terms of the agreement they would have been enabled to pay the entire sum due and secured by the mortgage.

We conclude that, under the terms of the mortgage, as explained by the agreement between the parties and their relations to each other and the conditions surrounding them, the mortgagee was under obligations to supply the necessary funds and supplies required by defendants in the logging business upon request of the defendants, in such amounts and sums as should not at any one time exceed $12,000.

2. Plaintiff and those under whom he holds refused to make the advances which they were under obligation to do, and the second question is, what are the damages, if any, which flowed from such breach of the contract, which was made between the parties.

It is argued here by the respondent, and was acquiesced in by the superior court, that the general rule for the measure of damages for refusal to deliver personal property, is the difference between the contract price and the market value of the goods at the time appointed for the delivery, and interest; that the damage for failure to furnish supplies would be the difference between the contract price and the market value at the time and place of delivery, and interest; and not the profit which defendants might have been able to make out of their business which they expected to carry on; and in case of the refusal to advance money, legal interest; and that money, like the staples of commerce, is in legal contemplation always in market and procurable at the legal rate of interest. It is also maintained by respondent that no party's condition with respect to the measure of damages should be worse

for having failed in his engagement to a person whose af-
fairs are embarrassed than if it had been made with one
in prosperous circumstances.

While conceding that the general principles controlling
the measure of damages are as maintained by respondent,
they cannot control in this case. It is true that the meas-
ure of damages for failure to repay money when due, or
ordinarily to furnish money for any purpose, is legal in-
terest, but always, if any special damages accrue, they may
be the subject of compensation. The familiar illustration
of the rule of damages for breach of an agreement to pro-
tect a draft shows that whatever damages are reasonably
in contemplation of the parties at the time the contract
is made may be recovered for a breach; and so with failure
to furnish supplies. And, if such damages are susceptible
of computation upon competent testimony, they may be
recovered. The defendants could not procure them else-
where; this inability was known when the agreement was
made by the mortgagee. In the case at bar there was a
fixed price for logs. Defendants had the premises from
which the logs could be procured. Certainly it would
seem reasonable that the expense of cutting the timber
and furnishing these logs at the place designated could
be ascertained. In fact we do not have to go so far as in
the case of *Skagit Railway & Lumber Co. v. Cole*, 2 Wash.
57 (25 Pac. 1077), to sustain the damages found by the
jury in this case. In that case it was said by the court:

" The appellee claimed he should be allowed to recover
as damages the value of the logs he could have put in the
market during the time after September 12, 1888, when
he was compelled to shut down in consequence of appel-
lant's failure to furnish the supplies, less the cost of get-
ting out and handling such logs, and also the value of the
logs he could have put in the market in July and August
and the first part of September, 1888, and after June 5,

1889, with the full force which he could have operated during said times had the supplies been furnished as contracted, over and above what he did put in with the diminished force, less the cost of getting out and handling such excess. Appellant contends that such damages or profits were too remote, conjectural and uncertain to be estimated; that the same depended upon the continuing ability of the men and teams engaged to perform the same amount of labor; that the weather should remain the same and the market price unchanged."

And at page 73, it was said:

" The position taken by appellee and sanctioned by the superior court is sustained by a number of cases very similar to this one. If the appellant, when it entered into this contract, knew that the appellee was unable to obtain these supplies elsewhere, and that he could not carry on the undertaking without its assistance, and knew when it ceased furnishing the same that the result would be to compel appellee to abandon the enterprise, or to seriously embarrass him in the further execution thereof, it must be held to have contemplated the direct and presumable results of its own wrongful act, and to be answerable in damages therefor. Nor do we think the damages too uncertain or conjectural to be estimated, within the trend of the better authorities. The trees were there from which the logs, spars and piles could be manufactured; and at the time of the breaches there was the benefit of past experience—the known results of previous efforts in carrying on the work—from which to form an estimate of what could have been done thereafter had the supplies been furnished. The timber itself when gotten out was a staple commodity, with a market value not subject to any sudden or great fluctuation, and this value was easily susceptible of proof."

We think the better considered authorities elsewhere maintain this rule for the measurement of damages and sustain its application in the case at bar. A number of these

authorities are cited in *Skagit Railway & Lumber Co. v. Cole, supra.*

The case is reversed with directions to the superior court of Wahkiakum county to allow the damages found for defendants by the jury under the counterclaim, and that judgment be entered for the difference existing between said counterclaim and the balance due on the mortgage.

SCOTT, C. J., and ANDERS, DUNBAR and GORDON, JJ., concur.

### OPINION ON RE-HEARING.

REAVIS, J.—On petition for rehearing in this cause our attention is directed to an error in the order for entry of judgment in the superior court given in the decision. The superior court was directed to enter judgment in favor of the defendants for the difference existing between the counterclaim of $3,000 and the balance due on the mortgage. We had overlooked the fact that this is a suit by the assignee of the mortgage and contract of the mortgagee and that the defendants can only plead damages for breach of the original contract as a defense against the claim of plaintiff. Code Proc., §§ 145 and 813.

The decision is therefore modified, and the superior court directed to allow defendants' counterclaim to offset plaintiff's demand, it not exceeding the amount of the counterclaim, but that no judgment beyond costs go against plaintiff in any event.

We have examined the whole petition for re-hearing and are satisfied with the conclusions heretofore reached in the cause.

SCOTT, C. J., and ANDERS, DUNBAR and GORDON, JJ., concur.