SCHULTZ v. STACK–GIBBS LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1916.)

No. 2604.

1. PLEADING  �kö11—EVIDENTIAL FACTS.

   In an action for breach of a contract under which plaintiff was to cut timber owned by defendant into logs and drive them, the complaint alleged that defendant failed to make a payment of money to plaintiff, and that when the contract was made plaintiff had $700 to his credit in a bank and owned a homestead, which constituted his entire assets, and he so informed defendant; that when it made default in payment plaintiff had mortgaged the homestead; that his expenditures under the contract had exhausted his resources; that he was unable to obtain further money or credit, unless defendant paid the amount due, to defendant's knowledge; and that because of defendant's default plaintiff was obliged to suspend work under the contract. *Held* that, assuming that these allegations in some way supported plaintiff's claim for consequential damages, they were nevertheless evidentiary, and not properly pleadable as elements of a cause of action.

   [Ed. Note.—For other cases, see Pleading, Cent. Dig. § 31; Dec. Dig.  ⊙ⅈ11.]

2. LOGS AND LOGGING  ⊙ⅈ8—LOGGING CONTRACTS—PERFORMANCE—CONDITIONS PRECEDENT.

   Defendant owned timber some miles from a stream in which logs were to be floated to market, and had no right of way to the stream. It contracted with plaintiff to cut the timber into logs, haul, and drive them. Plaintiff agreed to furnish all rights of way, and defendant agreed to pay

⊙ⅈ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plaintiff on the 15th day of each month $3.25 per thousand feet for all logs placed on skids during the preceding month, provided plaintiff should have roads made from the skidway to the banking ground on the stream, so that the logs could be hauled thereto without additional expense, excepting for hauling. *Held*, that the construction of the roads by plaintiff was a condition precedent to the payment of any money by defendant, and where plaintiff had not constructed such roads defendant was under no obligation to make the stipulated payment, though, to its knowledge, plaintiff was financially unable to perform unless such payment was made.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 15–17; Dec. Dig. ☞8.]

In Error to the District Court of the United States for the Northern Division of the District of Idaho.

Action at law by Rudolph Schultz against the Stack-Gibbs Lumber Company for damages for alleged breach by the defendant of two certain logging contracts. Judgment for defendant, and plaintiff brings error. Affirmed.

This action was commenced in the district court of the First judicial district of the state of Idaho in and for Shoshone county, and subsequently removed to the court below, upon petition of the defendant; the plaintiff being a citizen of the state of Idaho, and the defendant a corporation organized and existing under and by virtue of the laws of the state of Michigan.

On October 15, 1912, the plaintiff and the defendant (the latter will hereafter be referred to as the Lumber Company) entered into a logging contract by the terms of which the plaintiff agreed to cut into saw logs, and skid, haul, float, and drive to the main North fork of the Cœur d'Alene River, Idaho, all of the merchantable white pine and yellow pine timber situated on certain lands owned by the Lumber Company in Shoshone county, Idaho, of which not less than 1,000,000 feet of white pine timber was to be hauled and floated to such place before the spring drive of 1913 should pass Pine creek; the balance of the timber to be cut into logs and hauled and floated to the main North fork of the Cœur d'Alene river before the spring drive of 1914 moved, or not later than June 1, 1914. The contract contained specific recitals concerning the lengths and diameters of the logs to be cut, and the markings to be placed thereon, and also provided that the logs should be scaled by a scaler to be mutually agreed upon by the parties. The plaintiff agreed to furnish all right of way over which to haul the logs to be cut under the contract, and further to furnish receipts for all labor performed on the logs, or satisfactory evidence that the labor had been paid, and also receipts for payment for all supplies used in the logging of the timber, or satisfactory evidence that the supplies had been fully paid for. In consideration of the acts to be performed by the plaintiff, the Lumber Company agreed to pay to him, on the 15th day of each month, the sum of $3.25 per thousand feet, board measure, for all logs which should have been placed on skids by the plaintiff during the preceding month, provided "that the party of the first part [the plaintiff] shall have roads made from the skidway to the banking ground on Pine creek, so that the said logs can be hauled to the banking on Pine creek without additional expense, excepting for hauling." The payments to the plaintiff were to be made as follows: $2.25 per thousand feet, board measure, on the 15th day of each month for all logs which should have been hauled and floated in Pine creek by the plaintiff during the preceding calendar month, and the balance of $1 per thousand feet, board measure, on the 15th day of each month for all logs delivered in the North fork of the Cœur d'Alene river during the preceding calendar month.

By a second agreement between the same parties, of even date, the Lumber Company agreed to sell to the plaintiff, and the plaintiff agreed to buy, all of the mixed timber on the lands owned by the Lumber Company and described in the contract, at the price of 50 cents per thousand feet board measure, the price to be paid by the plaintiff to the Lumber Company on the 10th day of

each month for all timber cut and scaled during the preceding calendar month; the plaintiff agreeing to cut and move all of the timber within four years, and to pile and burn the brush resulting from the cutting thereof in conformity to the fire law of the state of Idaho.

The complaint filed by the plaintiff in the court below embraced two causes of action—the first being founded upon an alleged breach by the Lumber Company of the first contract between the parties; the second being for damages and loss alleged to have been suffered and sustained by the plaintiff owing to his inability to carry out and perform the terms of the second contract, such inability being alleged to have been caused by the. breach by the Lumber Company of the first contract.

In the first cause of action, the plaintiff, after setting forth the material provisions of the first contract, alleged that upon its execution and delivery he entered upon its performance, employed a large number of men, secured by purchase and lease the right of way for the necessary roads and skidways at a cash outlay of more than $1,100, purchased and furnished teams and invested more than $700 in camp equipage, tools, and supplies, and expended the sum of $250 for labor; that by December 15, 1912, he had felled, cut, and placed upon skids and skidways 250,000 feet of white and yellow pine, and in addition thereto he had felled 100,000 feet of timber preparatory to placing the same upon skids, and had in every respect complied with the conditions of the said contract upon his part; that thereupon, pursuant to the provisions of the contract, it became the duty of the Lumber Company to pay to him the sum of $812.50 (the said logs having been scaled as required by the contract). The plaintiff further alleged that at the time of the making of the first contract with the Lumber Company he had to his credit in the bank the. sum of about $700, which represented his total cash capital, of which fact he informed the defendant; that he further informed the defendant that he owned a homestead, which he could and would incumber for as large amount as he could by his best endeavor obtain; that these two items constituted his entire assets, which the Lumber, Company well knew. The plaintiff further alleged that before the 15th day of November, 1912, he had mortgaged his homestead for as large amount as he was able to obtain, and that the expenditures made in and about the said business by him, and required to be made under the terms of the contract, had exhausted all of his resources; that on the last-mentioned date the plaintiff requested the Lumber Company to pay him the sum of $812.50 for the logs already placed upon the skids, the same being due to him at that time from the Lumber Company, which sum the Lumber Company refused to pay; that the plaintiff, at the time of such refusal, had expended all the cash money which he had, and was utterly unable to obtain further money or credit from any source whatsoever, all of which facts were known to the Lumber Company; that because of the refusal of the Lumber Company to pay the plaintiff the amount alleged to be due him the plaintiff was unable to complete his part of the contract, and was obliged to suspend all efforts to carry out the contract and abandon the same.

In his second cause of action, the plaintiff set forth the material provisions of the second contract and alleged that it was dependent upon and in its execution was to follow the completion of the first contract; that by reason of the default of the Lumber Company as above set forth the plaintiff was prevented from carrying out and performing his part of the second contract, and he was obliged by reason of the acts and conduct of the Lumber Company to abandon the same; that there was growing and situate upon the lands of the Lumber Company 3,500,000 feet of mixed timber, and that, if the Lumber Company had kept its obligations with the plaintiff, he, in the performance of the second contract, would have made a profit of $2,625; that by reason of the acts of default on the part of the Lumber Company he had been damaged in that sum.

The Lumber Company interposed a motion to strike from the first cause of action the allegations respecting the financial condition of the plaintiff at the time of entering into the first contract, the mortgaging of his homestead, the subsequent exhausting of his resources, his inability to obtain credit, and his inability to proceed with the contract by reason of such facts. The Lumber

Company also interposed a motion to strike from the second cause of action the allegations relating to the inability of the plaintiff to perform the second contract, owing to alleged acts of default of the Lumber Company, and the profits which the plaintiff would have realized, had the second agreement been performed. The motions were granted. Subsequently the Lumber Company demurred specially to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, and, further, that it was ambiguous, unintelligible, and uncertain in various particulars. The demurrer was sustained.

The plaintiff having elected to stand upon the complaint, judgment of dismissal was entered against him. The granting of the Lumber Company's motions to strike, and the sustaining of its demurrer to the complaint, are assigned as error.

Chas. E. Miller and Justin H. Wixom, both of Wallace, Idaho, for plaintiff in error.

Reese H. Vorhees, of Spokane, Wash., and Ezra R. Whitla, of Cœur d'Alene, Idaho, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The plaintiff seeks to recover upon two causes of action based upon alleged breaches of two contracts, copies of which are attached to the complaint. The second contract is dependent upon the first. The first contract provides, among other things, that the plaintiff should cut into sawlogs a quantity of white and yellow pine timber located upon land belonging to the Lumber Company, and skid, haul, float, and drive said logs to a point mentioned in the contract. In consideration of this service, the Lumber Company agreed that on the 15th day of each month it would pay to plaintiff the sum of $3.25 per thousand feet, board measure, for all the white and yellow pine logs which should be placed on skids by the plaintiff during the preceding calendar month. To this part of the contract there was attached the following proviso:

"Providing, however, that the party of the first part shall have roads made from skidways to the banking ground of Pine creek so that the said logs can be hauled to the banking on Pine creek without additional expense."

Plaintiff alleges that on the 15th day of December, 1912, he had felled, cut, and placed upon skids and skidways 250,000 feet of white and yellow pine; that on the last-mentioned date the plaintiff requested the Lumber Company to pay him the sum of $812.50 for the logs placed upon the skids, which said sum the Lumber Company refused and neglected to pay.

The Lumber Company's obligation to pay this sum we shall assume for the present was dependent upon plaintiff's compliance with the terms of the proviso attached to the Lumber Company's obligation to pay, and with respect to which plaintiff alleges only a part compliance. He alleges:

"That on or about the said November 15, A. D. 1912, the plaintiff had expended for right of way for said road the sum of $200 and more than $1,100 for building and constructing such road and to fit the same for the purpose of hauling the logs to water."

In other words, by his own showing, plaintiff had not complied with his part of the contract, and, under its terms, no payment was then due from the Lumber Company to him; nevertheless, he demanded that the Lumber Company should comply with its part of the contract and pay to him the sum of $812.50. Plaintiff alleges, further, that by reason of the failure of the Lumber Company to pay him this sum of $812.50, which would have enabled him to proceed with his contract, he was unable to complete his part of the contract and was compelled to abandon the same. For the failure of the Lumber Company to carry out its part of the contract the plaintiff seeks to recover $5,000, which he alleges he would have realized as profits had the contract been completed; $700, expended for supplies and rent of building; $200, expended for right of way; $1,100, expended in making a roadway; and $255, expended for labor—making a total of $7,255, which plaintiff alleges was his loss by reason of the acts of the Lumber Company as set forth in the first cause of action.

Referring now to the allegations in the complaint struck out by the court below: They are to the effect that at the time of making the contract plaintiff had to his credit in the bank the sum of about $700, his total cash capital; that he owned a homestead at or near Kingston, in the county of Shoshone, which he could and would incumber for as large amount as he could by his best endeavors obtain, and that these two items constituted his entire and obtainable assets, and he so informed the Lumber Company; that it well knew the same and was fully advised of plaintiff's financial condition; that on December 15, 1912, when, it is alleged, the Lumber Company was in default to plaintiff in the payment of the amount then due, namely, the sum of $812.50, the plaintiff had mortgaged his homestead for as large amount as he was able to obtain, and that the expenditures made in and about the said business by plaintiff and required to be made under the terms of said contract had exhausted all of his resources; that he was utterly unable to obtain further money or credit from any source whatever, and that unless the Lumber Company paid to plaintiff the amount alleged to be due him, he would be unable to carry out his part of the contract, all of which facts plaintiff alleges were fully understood by the Lumber Company; and that because of the refusal of the Lumber Company to pay plaintiff the amount so alleged to be due him, the payment of which would have enabled plaintiff readily to proceed with his contract and to carry out his part of the same, the plaintiff was obliged to suspend all efforts to carry out his part of the said contract and to abandon the same.

[1] Assuming that these allegations may be construed as in some way supporting the claim for consequential damages, the fact remains that they are evidentiary, and not properly pleadable as elements of a cause of action. But there is the more serious objection that they are plainly intended to anticipate the defense that there was nothing due the plaintiff under the proviso requiring the plaintiff to have a road made from skidway to the banking ground. This objection is made clear by the question of the sufficiency of the complaint raised

by the defendant Lumber Company upon the special demurrer to the complaint.

A special demurrer is the method provided in Idaho for reaching an ambiguity or uncertainty in the complaint. The demurrer in this case was special, as well as general, and pointed out a number of ambiguities and uncertainties in detail, among others that the complaint was ambiguous, unintelligible, and uncertain in this:

"That it alleges in paragraph 6 that said contract provided and required plaintiff to furnish all right of way over which to haul logs to be cut from the land at his own expense, and also alleges that plaintiff had expended for right of way the sum of $200, and more than $1,100 for building and constructing such road and to fit the same for the purpose of hauling the logs to water, but does not allege, state, or show that plaintiff had secured or had any legal contract for the right of way or use of the road, or an easement for hauling logs across the land from the place of the skidding of said logs to the place where they were to be delivered in Pine creek, or that such road had been built its entire distance sufficient or proper over which to haul said logs."

The court below, in discussing the demurrer, said:

"It is provided that the first payment shall be made to the plaintiff at a certain time, in case that at such time the plaintiff shall have built roads from the skidways to the banking ground on Pine creek so that the logs can be hauled to Pine creek without additional expense. Under a fair construction of the contract, the building of these roads is a condition precedent to the maturity of the obligation to make the first payment. It is possible that the plaintiff intended to plead the construction of these roads, but there is no direct allegation to that effect, and there is no reasonable inference. It is alleged that he, the plaintiff, spent certain moneys for that purpose; but that fact alone does not imply the completion of the road. I think, if it be a fact that the road is completed, there should be inserted a positive statement to the effect that this provision of the contract has been complied with. This insertion may be made by interlineation, if the plaintiff so desires."

[2] The complaint was not amended in this respect, by interlineation or otherwise, and the plaintiff subsequently filed an election to stand upon the sufficiency of his complaint. We have, therefore, a virtual admission on the part of the plaintiff that the roads had not been constructed; and the question is: Was their construction a condition precedent to the payment of any moneys by the Lumber Company to the plaintiff under the contract?

There is nothing technical or ambiguous about the proviso in question. Language could hardly indicate a plainer intent on the part of the Lumber Company that roads from the skidways to the banking ground should be constructed prior to the payment of any moneys by it to the plaintiff. It was a vital term of the contract, as appears from its terms, and we may assume from the facts alleged that the logs were to be cut several miles from the river in which they were to be floated out to market. The Lumber Company had no right of way from its lands to the river. Without a right of way having been obtained and roads built, the logs would be valueless when cut, as there would be no way to get them to the market. If the rights of way were not obtained and the roads constructed, the defendant would be at the mercy of every one over whose lands the rights of way would have to be secured and roads constructed in order to take its logs to

market. On the other hand, if the rights of way were obtained and the roads built, and the plaintiff for any reason failed to bring the logs out of the woods, then the Lumber Company would have an opportunity to secure the services of others to haul the logs to the river, thereby saving its property from loss.

The difficulty with the plaintiff's case is that, conceding that his financial condition was as alleged in the complaint and that it was known to the Lumber Company, nevertheless there was, as a matter of law, no duty imposed upon the Lumber Company to come to his rescue to the extent of making a payment prior to the construction of the roads. The contract is complete. The payments to be made by the Lumber Company to the plaintiff under its terms are dependent upon certain acts to be performed by the latter. There is nothing to indicate that the first payment, or any payment, would be made by the Lumber Company, regardless of the failure of the plaintiff to perform any or all of the conditions, whether such failure to perform was caused by the financial inability of the plaintiff or by reason of any other fact whatsoever. Nothing may be read into the contract by implication, and, indeed, there is no suggestion on the part of the plaintiff that he was induced to enter into the contract by reason of any promises of financial assistance on the part of the Lumber Company, should he find himself unable to perform any of the conditions of the contract, through lack of funds.

The case is readily distinguished from that of the Skagit Railway & Lumber Co. v. Cole, 2 Wash. 57, 25 Pac. 1077, and the cases there cited, on the authority of which the plaintiff claims to have drafted his complaint. In that case the defendant had *specifically contracted* to furnish the plaintiff with supplies during the continuance of the logging contract, and the plaintiff's case was based upon a breach of such express provision. In Graham v. McCoy, 17 Wash. 63, 48 Pac. 780, 49 Pac. 235, and Federal Iron & Brass Bed Co. v. Hook, 42 Wash. 668, 85 Pac. 418, the same element of contract existed; the defendants having by the terms of the respective agreements bound themselves to perform certain acts for the breach of which the suits were instituted.

As the conclusion which we have reached calls for an affirmance of the judgment entered in the court below, it will be unnecessary to consider specifically the assignments of error based upon other grounds of demurrer to the first cause of action; and as the second cause of action of plaintiff's complaint is based upon an alleged default of the Lumber Company in the performance of the first contract, our determination that there was no such default disposes of the questions raised by the sustaining of the demurrer to the second cause of action.

The judgment is affirmed.