[No. 22107. Department Two. February 24, 1930.]

BEESON BROTHERS, *Respondent*, v. C. C. CHAMBERS *et al., Appellants.*[1]

[1]Reported in 285 Pac. 433.

*O. C. Moore,* for appellants.

*Williams & Cornelius,* for respondent.

MAIN, J.—The amended complaint in this case, which will be referred to as the complaint, states three causes of action. The first was for the amount claimed to be unpaid for lumber hauled; the second for merchandise furnished and freight and bridge material hauled; and the third was for damages for loss of profits alleged to have been the result of a breach of a contract by the defendants. The cause was tried to the court and a jury, and resulted in a verdict in favor of the plaintiff upon the first two causes of action in the sum of $1,104.09, and $3,908.47 upon the third cause of action. The defendants moved for a judgment notwithstanding the verdict, and also for a new trial, both of which motions were overruled. Judgment was entered upon the verdict, from which the defendants appealed.

The facts essentially to be stated are these:

The appellants, C. C. Chambers and J. M. Dungan, as partners, owned and operated a sawmill located in the mountains in the state of Idaho, about twelve miles from Kameron Spur, on a branch line of the Milwaukee railroad. The town of Elk River was three miles from Kameron Spur. The respondent Beeson Brothers is a corporation engaged in the business, in the city of Spokane of this state, of selling Ford automobiles and trucks.

March 17, 1928, the appellants entered into a contract with J. R. and L. W. Cox, brothers, for the hauling of lumber and poles from the sawmill to the town of Elk River and Kameron Spur. The contract estimated the lumber to be hauled during the season of that year at approximately three million feet and the poles at approximately five thousand. By the terms of the contract, Cox Bros. were required to furnish trucks for the purpose of hauling the lumber and poles to Kameron Spur or Elk River, as the appellants might designate.

For the purpose of carrying out this contract, Cox Bros. purchased from Beeson Bros. eight Ford trucks upon a conditional sale contract. They moved the equipment to the place where the work was to be performed, preparatory to entering upon its performance. The season during which lumber could be hauled from the mill to the railroad was comparatively short. The road from the mill to Kameron Spur passed up the hill after leaving the mill, and then down, and crossed a flat or swampy tract of land. Paragraph 9 of the contract provided that the appellants should

". . . keep the roads in a reasonably good state of repair during the period covered by the terms of this contract, for the hauling of said lumber."

May 21, 1928, differences having arisen between Cox Bros. and the appellants, Beeson Bros., together with Harry D. Tracy, one of their employees, went to Kameron Spur at the request of the appellant C. C. Chambers, for the purpose of a conference over the situation that had arisen. Appellants were interested in seeing that their lumber and poles were gotten to a shipping point on the railroad during the hauling season, and the respondent was interested in seeing that Cox Bros. performed the contract, otherwise a repossession of the trucks would be necessary.

At this conference, according to the testimony offered by the respondent, Chambers proposed that, if the respondent would take an assignment of the contract from Cox Bros., the appellants would put the road in good condition for hauling, planking such places as it might be necessary. Cox Bros. returned to Spokane, and Tracy, during the next day, went over the road, when he returned to Spokane. May 23, or two days after the conference at Kameron Spur, the respondent took an assignment from Cox Bros. of the contract for hauling the lumber, and on the same day

wrote a letter to the appellants inclosing a copy of the assignment. Thereafter, Tracy was put in charge by the respondent of the work of performing the contract. In due time, he began to do the hauling, with not very great success, as respondent claims, on account of the failure of the appellants to put the road in a reasonably good condition and to plank the mud-holes or spongy places. Some time during the month of June, the appellants hired other trucks to haul lumber and poles from the mill to Kameron Spur or Elk River.

The third cause of action is based upon a breach of contract to repair and plank the road, and the resultant loss of profits which was occasioned by the increased expense in the hauling over the road in the condition in which it was. The appellant makes two general contentions: First, that its motion for judgment notwithstanding the verdict should have been granted; and second, that, if that motion was not sustainable, then the motion for new trial should have been granted. We will first consider the questions which the appellant presents under the motion for judgment notwithstanding the verdict, and in this connection, attention will first be given to the points that pertain to the third cause of action.

It is first said that there is a discrepancy between the allegations in the complaint and the proof. The conference at Kameron Spur above referred to took place on the 21st. Assignment from Cox Bros. to the respondent was made two days later. There is no mention in the assignment or in the letter inclosing a copy of it to the appellants with reference to the repair of the road or the planking thereof.

The appellants say that the significance of the discrepancy between the allegations of the parties consists not so much in the difference in dates, as such, as in the resultant fact that, since the assignment was not

determined upon at Kameron Spur, pending the inspection of the road by Tracy, necessarily there was no meeting of minds at that time or later, between the appellants and the respondent, as Chambers was not subsequently in communication with the Beesons until after the assignment was executed.

This argument is based upon the assumption that the entire contract between the respondent and the appellants was evidenced by the Cox Bros. contract, the assignment thereof, and the letter of the respondent transmitting a copy of the assignment to the appellants. There was an additional oral contract, which was the result of the conference at Kameron Spur on May 21. At that time, the appellants, through Chambers, proposed to the respondent that they would do certain things, if the respondent would take the assignment of the Cox contract. After Tracy had investigated the road, this proposition was accepted by the respondent, in taking the assignment. It was not necessary, in order to make a binding contract, for Chambers, subsequent to the conference on May 21 and prior to or at the time the respondent took the assignment, to again repeat the offer. The contract was complete when the respondent took the assignment. There was not a fatal variance between the allegations of the complaint and the proof.

It is next contended that, if there be not a variance, as above pointed out, between the allegations of the complaint and the proof, the position of the respondent is nevertheless untenable, since the alleged collateral undertaking was at variance with, and materially alters, the written contract. In this connection, it is said by the appellants that all the prior negotiations were merged in the contract which was evidenced by the Cox contract, the assignment thereof,

and the letter transmitting a copy of the assignment to the appellants.

This contention is based upon the assumption that there was a complete novation, and that the respondent was substituted for and bore the same relation to the contract for the hauling as did Cox Bros. The argument upon this point fails to recognize that the oral contract between the parties was a separate and distinct contract, based upon a good consideration. The case of *Osburn v. Dolan,* 7 Wash. 62, 34 Pac. 433, relied upon by the appellants, is materially different in its facts. There was not there, as here, a separate oral agreement, based upon a sufficient consideration. In the present case, the Cox Bros. contract, which was assigned to the appellant, was the measure of its duties and obligations and fixed its compensation, but did not supersede the oral agreement, and the oral agreement was not merged therein.

It is next contended that no recovery can be permitted, since the Cox Bros. contract was not of itself the contract declared upon, and because the evidence falls short of establishing a case under the original agreement. In the complaint, the history of the transaction as viewed by the respondent was set out, but, as we read the allegations, the recovery was sought, not upon a breach of the Cox contract, but upon a breach of the oral agreement already referred to. There was evidence which, if believed by the jury, would sustain a finding that there was an oral agreement.

It is next contended that there is no evidence from which the jury were justified in finding loss of profits. The verdict upon the third cause of action as above stated was $3,908.47. The jury, in answer to a special interrogatory, found that the respondent's excess expenditures actually incurred over the expense

which would have been incurred had the roads been in good condition, was the amount named. Reliance is placed upon the well-known rule that anticipated profits, while recoverable in a proper case, must be shown with a reasonable degree of accuracy, and cannot rest upon speculation or conjecture. Tracy, who was the respondent's foreman in charge of the work, over objection, was permitted to testify as to the cost of doing the hauling with the road in the condition that it was, and what the cost would have been had the road been placed in the condition required by the contract.

This witness was in charge of the work, purchasing the supplies, and knew the condition of the road, and it cannot be said that his evidence falls within the class of speculation or conjecture. In *Bogart v. Pitchless Lumber Co.*, 72 Wash. 417, 130 Pac. 490, it was held that, upon the breach of a contract to employ the plaintiff to log defendant's timber, the plaintiff could recover the prospective profits, to be ascertained by the best evidence possible, such as estimates of qualified timber men acquainted with local conditions as to the cost of performing particular parts of the work, although the estimates do not furnish the measure of profits with mathematical certainty. It was there said:

"It is true, as contended, that 'what one thinks and calculates that he could have made a certain sum, for a breach of contract, is not evidence on the question of damages.' Nor is the subject one that is usually determined by opinion or expert testimony, based upon a hypothetical question; for, as is aptly said, as many witnesses might be found to swear that there would be no profits as might swear that there would be profits. This would tend to speculation, while the theory upon which prospective profits are allowed is that they can be estimated with reasonable certainty. Such profits do not have to be accurately known. They are to be determined from a consideration of all the tangible

evidence upon the subject. *Belch v. Big Store Co.,* 46 Wash. 1, 89 Pac. 174. This court is committed to the doctrine of allowing prospective profits. In *Watson v. Grays Harbor Brick Co.,* 3 Wash. 283, 28 Pac. 527, it was held that:

" 'When one contracts to perform work for another at a stipulated price, and is prevented by him from entering upon the performance, the measure of damages is the difference between the cost of performing the work by the party agreeing to do it and the price agreed to be paid for it.' See, also, *Skagit R. & Lumber Co. v. Cole,* 2 Wash. 57, 25 Pac. 1077; *Graham v. McCoy,* 17 Wash. 63, 48 Pac. 780, 49 Pac. 235.

"To ascertain the cost of performing any contract so as to arrive at the measure laid down in the above cases, resort must of necessity be had to the estimates of those who are competent to pass judgment and who have knowledge of the particular conditions. 'The trees were there from which the logs, spars and piles could be manufactured; and at the time of the breaches there was the benefit of past experience—the known results of previous efforts in carrying on the work— from which to form an estimate of what could have been done thereafter had the supplies been furnished.' *Skagit R. & Lumber Co. v. Cole, supra.*

"Such evidence is received upon the theory that it is the best evidence obtainable. Consequently men who know conditions, and have dealt in commodities, lands, or manufactured goods, are constantly called upon to advise courts and juries as to cost and value. 5 Ency. Evidence, 535, 569; Jones, Evidence, § 375 *et seq.*; Wigmore, Evidence, §§ 558, 713, 721.

"Whether a witness is competent to express an opinion depends largely upon the discretion and sound judgment of the trial judge. No hard and fast rule can be laid down in such cases. The object of every trial is to elicit the truth, and whether the opinion is to be based upon personal knowledge or upon hypothetical questions must necessarily vary as the cases present themselves, the court keeping in mind at all times the rule of best evidence. In this case, the witnesses had personal knowledge and estimated the cost of getting out the logs."

The evidence offered in the case now before us, and to which objection was made, was properly admitted under the law as declared in that case.

It is next contended that the appellant cannot recover because it made no effort to repair the road, and thus mitigate its damages.

There are two reasons why the respondent was not required to repair the road in order to avoid being subject to the charge of failing to mitigate the damages. It appears from the evidence that the appellants were doing some work, and were repeatedly promising Tracy that the road would be put in proper condition and that the mudholes would be planked. In addition to this, the respondent had not been authorized by the county to repair the road, and the appellants had been. In *Florence Fish Co. v. Everett Packing Co.*, 111 Wash. 1, 188 Pac. 792, it is said:

"It was, of course, the respondent's duty to minimize its loss as far as possible, and under certain circumstances the rule might have required it of itself to procure an assisting boat. But we think the circumstances shown here excused it. The appellant, according to the evidence it was the privilege of the jury to believe, at no time refused to furnish the assisting boat. Repeated demands were made upon it for such a boat, and at each demand the appellant promised to comply. Its conduct was such as to mislead the respondent, and the jury were warranted in finding that it was so misled."

It is next contended that the evidence does not sustain the finding of the jury of damages in the sum of $3,908.47, because it does not distinguish or differentiate between the expense incurred prior to June 25, when it is claimed the roads were bad, and the expense subsequent to that date. The proof showed what sum was expended, all told, and what would have been reasonably expended if the roads had been as provided

in the contract, and the excess is what the jury allowed, and was the proper measure of damages. The excess expenditure on account of the condition of the road bore a direct and immediate relation to the question of profits. If, however, the position of the appellants were correct on this point, it would not necessarily follow that the motion for judgment notwithstanding the verdict should be sustained.

The questions above considered, as already indicated, have to do with the third cause of action. We will now consider the motion for judgment notwithstanding the verdict, as related to the first and second causes of action.

At the time Cox Bros. made the assignment to the respondent, they owed the appellants the sum of $901.27, and the appellants sought to offset this amount against the demands of the first and second causes of action. The evidence offered by the respondent tends to show that it was misled by Chambers, at the time of the conference on May 21, as to the condition of the account between Cox Bros. and the appellants. The evidence offered by the appellants tends to show that there was no misleading, and that the respondent was familiar with the state of that account at the time it took that assignment. It is said that the respondent's contention cannot be sustained, because to do so would be to vary and impair by oral proof the legal effect of a written contract, which was the original Cox Bros. contract and the written assignment.

It will be admitted that the legal effect of a contract is no more subject to be impaired or varied by parol proof than is the express language of such a contract, but that rule does not meet the situation. If the evidence offered by the respondent be believed—and the jury had the right to accept it—the appellants failed to speak when it was their duty to speak, and inform the

respondent of the condition of the account between them and Cox Bros., and failing to do so was equivalent to misleading or deceptive talk, which would have amounted to fraud: *Jammie v. Robinson,* 114 Wash. 275, 195 Pac. 6.

The question whether the respondent was misled was one for the jury. The motion for judgment notwithstanding the verdict was properly as to all of the causes of action overruled.

We will now take up the questions which arise under the motion of the appellants for a new trial.

■ Upon this branch of the case, it is first contended that it was error for the court, over objection, to permit each of the Beeson brothers to testify in substance that they would not have taken over the Cox Bros. contract, had they known of the indebtedness of Cox Bros. to the appellants. This testimony did not have a direct bearing upon either of the principal issues of fact in this case, and even though it should not have been admitted, it does not follow that its admission was reversible error.

■ It is next contended that it was error to permit two witnesses on behalf of respondent to testify over objection as to what the defendant Chambers said, sometime during the hauling operations, to the effect that he desired to get rid of the Ford trucks and that they should block and otherwise interfere with their operation on the road. While motive or intent is not ordinarily a subject of material or relevant inquiry in an action for damages for breach of contract, there may be cases when such testimony does become material and relevant. In 22 C. J., page 175, it is said:

"While in civil cases one's liability rests upon the act, and the motive or intent of the party is usually irrelevant and immaterial, there are many important exceptions to this rule, and in a great variety of cases

evidence of the motive and intent with which an act was done is relevant and admissible, as is also evidence of a person's intention or preparation to commit an act for which it is sought to hold him liable. When it is disputed whether certain persons have done a certain act, the existence of a motive on their part to do or to refrain from doing that act is relevant.''

In the present case, one of the principal questions was whether the appellants had breached the contract with reference to the road. Respondent claimed that they had, and the appellants claimed that they had not. With this situation presented, it was not error to admit the testimony complained of, as it had some bearing upon the question of whether the appellants had breached the contract.

It is next contended that the court erred in giving instruction No. 5. The criticism directed against this instruction is that it permitted a recovery on the third cause of action even though the jury found that the oral promises were not in fact made. It is further claimed that the court should have given the appellants' requested instruction No. 2, to the effect that the respondent could not recover unless the jury found that the oral contract was made. Assuming without so deciding that instruction No. 5 is subject to the criticism directed against it, and that instruction No. 2 should have been given, no prejudicial error resulted therefrom, because the jury, in answer to special interrogatory No. 2, found that the oral agreement to place the road in ''good condition and keep them so, and would plank the mud-holes,'' was in fact made. This shows that the jury were in no sense misled by instruction No. 5, or the failure to give requested instruction No. 2.

It is next contended that paragraph ''B'' of the third special interrogatory, submitted by the court with its general instructions, contained an assumption

of fact that the road was not in good condition, and was a comment on the facts, in violation of section 16, article IV, of the state constitution.

In submitting the interrogatory, the court of course was not assuming to instruct the jury, but only to propound a question, and we think that the interrogatory is not subject to the criticism directed against it. Assuming, however, that it is, and that it occupies the same status as an instruction to the jury, then it would seem to follow that the same exception should have been taken to it as though it were an instruction. The only exception taken to the interrogatory was this:

"Defendants except to the submission to the jury of interrogatory No. 3."

There was nothing in the exception which pointed out to the court the point of law or question of fact which made the interrogatory improper.

Under the cases of *Kelley v. Cohen,* 152 Wash. 1, 277 Pac. 74, and *Wallin v. Massachusetts Bonding & Insurance Co.,* 152 Wash. 272, 277 Pac. 999, construing Rule VI of this court (Rem. 1927 Sup., § 308-6), which covers the matter of exceptions to a charge to the jury, and the refusal to charge, the exception to interrogatory No. 3 was not sufficiently specific "to apprise the judge of the points of law or questions of fact in dispute," which is the language of the rule.

Finally, it is contended that the court erred in giving instruction No. 2. It does not appear to us that that instruction is subject to the criticism which is directed against it by the appellants, when it is read in its entirety and in connection with the other instructions in the case.

The judgment will be affirmed.

MITCHELL, C. J., FRENCH, FULLERTON, and HOLCOMB, JJ., concur.