B. V. HOLE, JR., *Respondent and Cross-appellant,* v.
UNITY PETROLEUM CORPORATION, *Appellant.*[1]

[1]Reported in 131 P. (2d) 150.

*Brown & Brown* (*Louis P. Donovan,* of counsel), for appellant.

*Geo. W. Young* and *B. A. Farley,* for respondent and cross-appellant.

DRIVER, J.—Plaintiff brought this action to recover damages for the breach of a written contract with defendant corporation, which operates a gasoline refinery at Kalispell, Montana. The material provisions of the contract, dated October 21, 1940, may be summarized as follows:

The plaintiff represented that he was the owner of a lease on a tract of land in the city of Spokane and agreed to assign the lease to defendant. Plaintiff

further represented that he was the owner of a Studebaker truck and Gunderson semitrailer, equipped with a tank of forty-five hundred gallons capacity and a pump, for hauling gasoline and other petroleum products, subject to a chattel mortgage given to secure an indebtedness on which there was an unpaid balance of $1,402.10. Plaintiff agreed to transfer the truck and trailer to defendant oil company, subject to the mortgage, which the latter agreed to pay.

Defendant agreed to sell to plaintiff at cost, on conditional bill of sale, four steel storage tanks to be installed upon the Spokane tract. The purchase price was to be paid in specified monthly installments, and defendant agreed that, when the price was fully paid, it would assign the lease back to plaintiff and convey the tanks to him by a bill of sale.

Plaintiff agreed to sell defendant's manufactured petroleum products exclusively (lubricating oils and greases excepted). The prices to be paid for leaded gasoline, white gasoline, stove oil, and fuel oil were specified, and the minimum monthly amounts which plaintiff agreed to purchase, and the maximum monthly amounts which he was entitled to demand, were stated. It was agreed that, if the service station retail price of gasoline as maintained by the major oil companies in Spokane should be advanced, the amount of such advance would be added to the prices named in the contract.

Plaintiff was allowed a credit of $1,830 for the tanker truck transferred to defendant, which credit was to be applied upon the purchase price of products bought by plaintiff under the contract.

Defendant employed plaintiff to transport gasoline and other petroleum products from defendant's refinery in Kalispell to its bulk plant in Spokane for one and one-half cents a gallon, plaintiff to be allowed the

free use of the tanker truck. It was agreed that defendant might withhold from plaintiff's compensation two hundred fifty dollars a month for the first six months and three hundred dollars a month thereafter, and apply such sums to reimburse defendant for the chattel mortgage indebtedness of $1,402.10 to be paid by defendant and for the credit of $1,830 advanced to plaintiff for the purchase of petroleum products; and, when such sums were fully repaid, defendant agreed to transfer the truck and trailer back to plaintiff.

The contract was to be in effect for the term of one year commencing November 1, 1940, and plaintiff was given the right, at his option, to extend it for an additional year.

In the first cause of action of his complaint, plaintiff set out the written contract as an exhibit, alleged that it had been breached by defendant, and asked for damages for the latter's failure to perform the contract and provide bulk storage tanks and petroleum products as agreed. The second cause of action was for damages for defendant's failure to employ plaintiff to operate the tanker truck to transport petroleum products from Kalispell to Spokane. The third cause of action was for the purchase price of the tanker truck, it being plaintiff's theory that the transaction provided for in the contract, with reference to that equipment, was, in effect, a sale thereof from plaintiff to defendant.

By its answer, defendant generally denied the material allegations of each of the three causes of action of the complaint, and set up three affirmative defenses, which need not be considered further, as their rejection by the trial court has not been assigned as error on the appeal.

After a trial without a jury, the court found that the parties had entered into the contract and that it was breached by the defendant. The court reached the con-

clusion that the plaintiff was entitled to recover damages on the first cause of action for defendant's failure to supply plaintiff with gasoline as agreed for the period of one year; that plaintiff had failed to prove that he had been damaged as alleged in his second cause of action; and that plaintiff was not entitled to recover on his third cause of action for the purchase price of the truck and trailer alleged to have been sold to the defendant.

From a judgment accordingly entered, defendant has appealed, and plaintiff has cross-appealed as to the amount of his recovery under his first cause of action and from denial of his right to recover under his third cause of action. Despite the cross-appeal, for convenience, we shall refer to the defendant as the appellant and to the plaintiff as the respondent throughout the remainder of this opinion.

The facts as generally found by the court and supported by a preponderance of the evidence may be summarized as follows: Before entering into the contract upon which the present action was based, respondent had for many years engaged in the production and retail and wholesale distribution of petroleum products. At one time, he had, in Spokane, a bulk storage plant, and, during the year 1939, he distributed a considerable quantity of such products in the vicinity of that city, although, for the most part, his sales were in small lots and the orders were not repeated.

Respondent purchased the Studebaker truck and tanker trailer in December, 1939. Prior to that time, he had been buying his products from appellant and had been transporting them by motor freight common carrier from Kalispell to Spokane. During the year 1940, and prior to about October 15th, with several substantial exceptions, respondent's business was limited to supplying gasoline to the Red Devil Fuel Com-

pany, which operated a large retail service station in Spokane and another station in Coeur d'Alene, Idaho. Respondent purchased this gasoline from the Yale Oil Company, which operated a refinery in Kalispell, and transported it to Spokane in his own tanker truck. The average amount sold roughly approximated the maximum monthly quantities of both grades of gasoline specified in respondent's contract with appellant.

Respondent had been buying gasoline tax-paid and taking delivery thereof in Montana. He had no distributor's license for Washington, and, it appears from the record, some objection was made by the state as to his method of operation, which caused the Yale Oil Company to stop selling its products to him about October 15, 1940. He then went to Kalispell and, on October 19th, entered into negotiations with appellant for the purchase of his supply of gasoline. The negotiations ripened into the contract dated October 21st. Respondent tendered appellant instruments of transfer of his interest in the tanker truck and an assignment of his lease to the Spokane real property, but, when he took his tanker to Kalispell for a load of gasoline, appellant refused to sell it to him except on a cash basis. The appellant also failed to pay the chattel mortgage on the truck and trailer, and institution of foreclosure proceedings followed. The proceedings were still pending at the time of the trial of the instant case.

After October 15th, the Red Devil Fuel Company purchased its gasoline directly from the Yale Oil Company. Just prior to that date, it had been getting its entire supply through the respondent. According to the testimony of the president of the corporation which owned the Red Devil Fuel Company, he knew that respondent had entered into a contract with appellant, and it was his intention that the fuel company would continue to buy gasoline from respondent provided

respondent could furnish the quality and quantity required.

Respondent produced his books and records showing the amounts of gasoline sold by him during the year 1940 and the prices which he received. He and a certified public accountant who had examined his books and records both testified as to what his margin of profit was and also estimated the profit he would have made under the contract with appellant had it not been breached.

■ The principal contention advanced by appellant's assignments of error is that respondent is not entitled to recover damages for breach of the contract for the reason that he did not have an established business and did not prove loss of prospective profits with sufficient certainty. The answer to this contention is clearly stated in the following excerpt from the well-reasoned memorandum opinion of the trial court:

"The contract being enforceable, the action of the defendant [appellant] in refusing to comply with its terms and so notifying the plaintiff [respondent], constituted a breach of contract and by reason thereof the plaintiff is entitled to such damages as he suffered.

"The question then is, what are the damages that proximately resulted from the breach of the contract and what is the measure of such damage? In *Jones vs. Shell Oil Company,* 164 Wash. 543, our Court, quoting from the case of *Seeley vs. Peabody,* 139 Wash. 382, stated as follows:

" 'We think it may be said, speaking generally, that, when one injures another by some unwarranted act, the measure of the damage of the one so injured will not be measured by the Court with any great degree of nicety, when the circumstances are such as to not permit of such measurement.'

"The general rule is laid down in 15 Am. Juris. p. 573:

" 'According to the weight of authority, however, a recovery may be had for such losses (future profit)

where they are reasonably certain in character and are the proximate result of either tort or breach of contract or where, in case of a contract, they may be reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of a breach.

" 'To come within the rule, it must be made to appear that the business which is claimed to have been interrupted was an established one which had been successfully conducted for such length of time and had such a trade established that the profits thereof are reasonably ascertainable.'

"Our State is committed to this doctrine. (*Webster vs. Beau,* 77 Wash. 445, and other cases cited by counsel.)

"In the instant case the evidence shows the plaintiff had an established business over a period of several years and was familiar with and experienced in the handling of petroleum products. This was not such a situation as presented in the case of *Webster vs. Beau, supra.* The evidence shows that plaintiff had canvassed the trade in the surrounding territory and had engaged in the sale of wholesale and retail lots; that since the first of the year 1940, he had supplied the Red Devil Fuel Company, one of the large retail stations in the city, with gasoline. Likewise, he had experience in the transportation of petroleum products over this particular route from Kalispell to Spokane.

"Defendant has argued that the plaintiff did not have an established business at the time of the contract and particularly urged that he did not have a contract with the Red Devil Fuel Company. The evidence shows that he ceased hauling to the company sometime after the 15th of October, 1940, and did not have a contract for any future period. However, from the testimony of Mr. Kjosness, the president of the company owning the Red Devil Fuel Company, and from Mr. Powell, the manager of the Red Devil Fuel Company, it sufficiently appears with reasonable certainty that the plaintiff could have regained this account as soon as he was able to furnish gasoline on the contract."

The trial court concluded that respondent was en-

titled to recover for loss of prospective profits measured by the difference between the contract prices of the two grades of gasoline and the prices which respondent would have received for the gasoline the Red Devil Fuel Company would likely have purchased from him during the life of the contract.

The doctrine enunciated and applied by the trial court, that, on breach of contract, loss of prospective profits of an established business may be recovered if they can be ascertained with reasonable certainty, has been approved in numerous cases of this court. *Federal Iron and Brass Bed Co. v. Hock,* 42 Wash. 668, 85 Pac. 418; *Bogart v. Pitchless Lbr. Co.,* 72 Wash. 417, 130 Pac. 490; *Loutzenhiser v. Peck,* 89 Wash. 435, 154 Pac. 814; *Nelson v. Davenport,* 108 Wash. 259, 183 Pac. 132; *Florence Fish Co. v. Everett Packing Co.,* 111 Wash. 1, 188 Pac. 792; *Bowman v. Helser,* 143 Wash. 397, 255 Pac. 146; *Beeson Bros. v. Chambers,* 155 Wash. 564, 285 Pac. 433; *Wick Co. v. Du Barry,* 159 Wash. 380, 293 Pac. 447; *Jones v. Shell Oil Co.,* 164 Wash. 543, 3 P. (2d) 141; *Quist v. Zerr,* 12 Wn. (2d) 21, 120 P. (2d) 539.

Appellant next maintains that there was an available market in Spokane in which respondent could have purchased gasoline in the quantities contemplated in the contract and at prices which would have minimized, or entirely prevented, loss on his part, and that it was his duty to make such purchases.

The contract did not call for purchases of gasoline by respondent for cash. He was not in a position to pay cash. The contract recognized that and made provision for the extension to him of a substantial line of credit. That credit failed when appellant breached the contract. There was some evidence that a buyer, in a favorable bargaining position, buying in large lots could have purchased gasoline at prices somewhat be-

low those quoted in the contract, but it was not shown that one in the situation of respondent could have done so.

■ Finally, appellant contends that the trial court erred in admitting over objection evidence of special damages for loss of profits, for the reason that such special damages had not been pleaded.

In the first cause of action of his complaint, respondent alleged only general damages, it is true; but, in a bill of particulars which he filed, it was stated that the damage alleged in that cause of action consisted of "the net profit plaintiff [respondent] would have made had the defendant performed its contract, and represents the difference between the gross sales which would have been made less the cost thereof and administrative expense." The proof of loss of anticipated profits by respondent was within the pleadings and was not in any way improperly prejudicial to appellant.

■ Passing now to the cross-appeal, respondent maintains that he should have been awarded damages for loss of profits for the period of two years. As stated, the contract ran for one year. Respondent had the right, at his election, to renew it for an additional period of one year. The trial court concluded that computation of damages for prospective profits beyond the term of the contract would be too speculative and doubtful, and in this we agree. The distribution of gasoline is a highly competitive and uncertain business. Respondent would not have exercised his option to extend the life of the contract if conditions did not appear to be favorable when the time to make his election arrived. Even if we assume that he would have chosen to extend the contract, it would not be possible to determine with reasonable certainty what, if any, profit he would have realized during the second

year.  See *Warner v. Channell Chemical Co.*, 121 Wash. 237, 208 Pac. 1104.

Respondent also argues that he should have had damages for loss of profits on the fuel oil phase of the contract.  We answer that contention by again quoting from the trial court's memorandum opinion:

"With reference to the fuel oil, it is my opinion that the proof is not sufficient to show that the loss of profit on the fuel oil can be reasonably ascertainable.  The plaintiff [respondent] relied to a great extent on the discussion that he had with Mr. Powell relative to getting customers through the Red Devil Fuel Company.  However, Mr. Powell testified that he would be interested in this type of business, which they hadn't yet engaged in, provided he would make a profit for his company.  The price obtained from individual sales or scattered sales to dealers by the plaintiff shown by the testimony would not of itself warrant a finding that a determinable profit could be made in view of the price he would have to pay under the contract.  Without knowing the profit Mr. Powell would insist on, there is not much way in which a loss to the plaintiff can be reliably estimated.  The records of plaintiff introduced in evidence show that in the fall of 1940 until he ceased operating he dealt almost exclusively in gasoline delivered to the Red Devil Fuel Company and he had previously given up the bulk storage plant so that it would seem reasonable that this type of business was not profitable despite the fact that there was some testimony that there was a large field for such business in this vicinity."

Respondent also maintains that the court erred in not giving him judgment on his third cause of action for what he terms the purchase price of the tanker truck sold by him to appellant company.

The transaction fully outlined in the contract with reference to this personal property was not intended to be, and did not constitute, a sale.  The transfer of title to the tanker clearly was for the purpose of af-

fording appellant security for the credit advanced to respondent for the purchase of its products and for payments to be made on the chattel mortgage. When appellant was repaid in the manner specified in the contract, the title to the tanker was to be transferred back to respondent. Appellant failed to pay the chattel mortgage, as it agreed to do, it is true, but respondent did not prove any damage for which he could recover on that account.

Judgment affirmed.

ROBINSON, C. J., STEINERT, and SIMPSON, JJ., concur.

