[No. 4079. Decided December 20, 1901.]

THOMAS CARSTENS et al., Appellants, v. MICHAEL EARLES et al., Respondents.

TRIAL — INSTRUCTIONS — CONSTRUCTION AS A WHOLE.

Although detached expressions in the courts' charge to the jury, if considered as independent expressions, may be technically erroneous, yet when the instructions as a whole fairly state

the law and do not mislead the jury, there is no prejudicial error.

SAME — REPLEVIN — INSTRUCTION AS A WHOLE.

In an action to recover possession of an engine which plaintiffs claimed to have loaned a logging company, but which defendants claimed had been supplied to such company under a written contract which provided, in consideration of certain agreements, that plaintiffs should furnish such company all necessary supplies, such as provisions, meats, hay, feed, and all other necessaries required to carry on the logging business except horses, mules and cattle, an instruction that the jury's verdict should be in favor of defendants, if they believed from the evidence that the written contract had never been abrogated and that the ownership of the engine vested in the logging company, was proper where the evidence showed that the parties to such written contract had furnished axes, saws, grindstones, peevies, chains and wire cable thereunder, and it was proper to leave it to the jury to determine whether the engine had been furnished in the same way.

SAME —

Where there was evidence that a partnership had expressly assumed to pay an indebtedness on a logging outfit belonging to one of the partners and used by the copartnership, an instruction is not misleading as intimating that one partner can take partnership property to pay his individual debts, because it charges the jury that if they believe a certain engine became the property of the partnership and that the latter, by its managing partner, transferred it to another in consideration of an antecedent debt, who in turn transferred it to defendants upon their promise to pay therefor, then their verdict should be for defendants.

SAME — COMMENT ON EVIDENCE.

In an action involving the title to a certain engine claimed by defendants under a written contract and by plaintiffs by virtue of a subsequent abrogation thereof by parol agreement, an instruction which charges the jury that "where it has once been established that there has been a contract of agreement between two or more individuals, and the same is sought to be avoided by any parol agreement, that the written agreement is the best evidence," should not be held as prejudicial error on the ground of being a comment on the evidence, where the correctness of the written instrument is not disputed by any evidence, but in fact fully conceded, and the only object of the parol evidence

was to show that the subject matter in controversy was not included in the terms of the written agreement.

SAME — PREPONDERANCE OF EVIDENCE.

An instruction charging the jury to find in a certain way unless the contrary. "shall be established by a preponderance of the evidence satisfactory to your minds," in effect tells the jury that, if they "believe" from a preponderance of the evidence, they should so find, and such charge is not misleading on the ground of telling the jury that more than a preponderance of evidence is required.

SAME.

The use of the term "fair preponderance" in referring in an instruction to the preponderance of evidence necessary to justify the finding of the jury is not misleading.

SAME — INTERPRETATION OF WRITTEN CONTRACT — WHEN QUESTION FOR JURY.

An instruction that all contracts, whether written or oral, that have been introduced in this case, are before the jury for their consiaeration and interpretation, is not erroneous on the ground of violating the rule that contracts are to be construed by the court, where the evidence shows there are disputes as to the intentions of the parties to the written agreement, and questions of rescission by disputed oral agreements.

SAME — BURDEN OF PROOF.

Where plaintiffs by both their pleading and proof in an action of replevin allege and show that a demand had been made, an instruction that the burden of proof is on them to show that fact is not erroneous, even though demand was unnecessary, owing to the fact that defendants were claiming the property in controversy as their own.

SAME.

Where under the isssues tendered by plaintiffs they had made proof of demand, though in fact it was unnecessary, an instruction that the burden of proof is on them to show demand is cured by a subsequent charge that "the plaintiff need not prove a demand, provided the defendants are proven by a preponderance of the evidence to be claiming the property as their own."

SAME — PRESUMPTION AS TO CONTINUANCE OF PARTNERSHIP.

Where a partnership agreement containing no limitation as to time is in evidence, an instruction by the court that the

agreement is presumed to continue until competent proof of its dissolution is proper.

Appeal from Superior Court, King County.—Hon. G. MEADE EMORY, Judge. Affirmed.

*John E. Humphries, Harrison Bostwick* and *Louis Williams,* for appellants.

*Brady & Gay,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought to recover possession of a certain engine and boiler described in the complaint as "one 9″x10″ Double Engine Single Drum Logging Hoist Engine and Boiler complete." It is alleged that on the 2d day of June, 1898, plaintiffs were, and now are, the owners and lawfully entitled to the immediate possession of said engine and boiler, and that the same are wrongfully in the possession of the defendants in Clallam county, state of Washington; that on the 2d day of June, 1898, the plaintiffs demanded of defendants possession of said property, which was refused. It is alleged that the value of the property on June 2, 1898, was $1,000, and that ever since said date defendants have wrongfully withheld the same from plaintiffs; that the reasonable value of the use of the property is $6 per day; and that plaintiffs are damaged by depreciation in the value of said property in the sum of $500. Judgment is demanded for the recovery of the property, or the value thereof, and for the amount of per diem and damages above stated. The answer denies the above allegations, and avers that the reasonable value of the property is not to exceed $800. It is alleged affirmatively by the defendant, the Seattle Logging Company, that in the fall of 1896, or early in 1897, said engine and boiler became the property of the Saginaw

Logging Company, a corporation composed of Thomas
Jose, M. L. Jose, and Claus Skavdale, and was held by
said partnership as the owner thereof; that the plaintiffs
were never in possession of the property, and never placed
of record any instrument to show that they claimed any in-
terest therein, but, on the contrary, knowingly permitted
the Saginaw Logging Company to treat the said engine as
its property, and to hold itself out to all persons and to the
defendants as the owner thereof; and that, relying on such
ownership and apparent ownership, and upon the silence
of the plaintiffs, and their acquiescence in the conduct of
the Saginaw Logging Company, in treating said engine as
its property, the defendant Seattle Logging Company, in
good faith and for a valuable consideration, bought said
property of Albert E. Hall, who had previously purchased
it from the Saginaw Logging Company. The reply denies
the affirmative averments of the answer. The action was
commenced in Clallam county, but by stipulation was re-
moved from that county, and tried before the superior
court of King county. A trial was had before a jury, re-
sulting in a verdict in favor of defendants. Judgment was
rendered in accordance with the verdict, and plaintiffs have
appealed.

It appears from the evidence that prior to the formation
of the partnership known as the Saginaw Logging Com-
pany, above described, Thomas Jose was the owner of a
logging outfit, upon which he had given a chattel mortgage,
which afterwards came to be held by the said Albert E.
Hall. This logging outfit was used by the partnership of
the Saginaw Logging Company in the conduct of its log-
ging business. The obligation secured by said mortgage
was the individual obligation of said Jose, but it is claimed
that some time after the existence of the partnership, in
consideration of the forbearance of the holder of the mort-

gage to foreclose the same, the partnership assumed the payment of $800 of the mortgage debt. In June, 1896, a written agreement was made between said Saginaw Logging Company, and appellants, by the terms of which said Saginaw Logging Company transferred to appellants all of the timber and logs to be removed by said partnership from certain lands in Clallam county. In consideration thereof, appellants agreed to furnish said partnership all necessary supplies, such as provisions, meats, hay, feed, and all other necessaries required to carry on the logging business except horses, mules, or cattle. Appellants further agreed to cause to be sold all the said logs at the best possible price, and to apply the proceeds—First to the payment of all labor employed in the cutting and procuring of said logs; second, to retain for themselves all moneys theretofore advanced by appellants to said partnership, all amounts then due for supplies theretofore furnished, as well as all amounts which should thereafter become due for supplies or provisions furnished; third, that the title to all of said timber and logs should remain in appellants until all payments above enumerated should be made, and the balance remaining from the proceeds of the sale of said logs should be paid to the said Saginaw Logging Company, less certain interest charges from the dates of the bills for supplies furnished, which should be retained by appellants. In December, 1896, and while the parties were acting under the above agreement, the Saginaw Logging Company being in need of a logging engine, applied to appellants to furnish such engine. Appellants accordingly purchased from the Washington Iron Works Company the engine and boiler involved in this suit. The purchase was made under a written conditional sale contract. The Washington Iron Works Company retained title to the property until the purchase price of $1,200 should be fully paid, and said

contract was duly filed for record, in both King and Clallam counties. The deferred payments were all afterwards paid by appellants. Soon after the purchase of said engine, appellants caused it to be shipped to the Saginaw Logging Company at its logging camp in Clallam county, and it was thereafter used by said company in handling the logs heretofore mentioned. This use of the engine continued until July, 1897, when the appellants declined to furnish said Saginaw Logging Company with more supplies, and thereupon further operations under the aforesaid agreement ceased. The evidence is conflicting as to what disposition was to be made of the logging engine. Appellants' testimony is to the effect that in July, 1897, a meeting of the parties was had in the office of the appellants, in Seattle, when, among other things, it was orally agreed that the engine was then turned over to appellants, and was to be left in the possession of Claus Skavdale, a member of the partnership of the Saginaw Logging Company, who should hold it as the custodian of appellants until they could ship it to Seattle. Respondents' testimony is to the effect that no such arrangement or understanding was had, and that the partnership of the Saginaw Logging Company continued to retain possession of said engine. After the time aforesaid, in July, 1897, the Saginaw Logging Company ceased to do business as a partnership. However, no distribution of the assets of the partnership seems to have been made; and on the 15th day of September, 1897, Thomas Jose, as managing partner of said firm, transferred said engine, together with other property, to said Albert E. Hall, in payment of the $800 which it is claimed said firm had assumed to pay upon the mortgage debt aforesaid. Thereafter said Albert E. Hall sold and delivered said engine to the respondent Seattle Logging Company. Appellants' position is that when they finished the payments for said engine

the title thereto fully vested in them, that they simply loaned the engine to the Saginaw Logging Company, and that said company never had any title thereto. Respondents' position is that the engine was furnished by appellants to the Saginaw Logging Company in pursuance of the terms of the written contract heretofore described, and that it became the property of the logging company. The clause in the aforesaid contract provides that appellants agreed to furnish "all necessary supplies, such as provisions, meats, hay, feed, and all other necessaries required to carry on the logging business, except horses, mules, or cattle." Appellants contend that the above provision is limited to supplies in the way of provisions, as specified. Respondents, however, insist that the words, "and all other necessaries required to carry on the logging business except horses, mules, or cattle," cover everything required for the logging business, aside from the exception named. The evidence shows that appellants furnished provisions, hay, feed, axes, saws, grindstones, peevies, chains, and a wire cable. It is not claimed that the title to the above articles did not pass to the logging company, and respondents insist that the engine was furnished under the same arrangement as those of the articles above named, which cannot be called provisions, and that the engine must be classified with them. The jury, by its answers to special interrogatories, found with respondents' contention, and therefore by its general verdict found that appellants were not entitled to recover possession of the engine.

A number of errors are assigned, but they are all based upon the instructions of the court. The first error assigned is that the court erred in giving, of its own motion, the following instruction:

"I instruct you that if you believe that Carstens Bros. and the partnership known as the Saginaw Logging Com-

pany entered into the contract marked 'Defendants' Exhibit 1', and if you further believe that the boiler, engine and fittings were furnished by the former to the latter subsequent to the date of the contract marked 'Exhibit 1', then the title to the property in question would pass absolutely to the partnership irrespective of any oral agreement in conflict with the terms of the written instrument and would remain there until parted with by some act on the part of its members."

Exhibit 1, mentioned in the above instruction, refers to the written contract between appellants and the Saginaw Logging Company. It is urged by appellants that by the instruction the court entirely excluded from the jury the question of the alleged oral agreement said to have been made in July, 1897,—months after the written agreement was made,—and by the terms of which it is claimed the engine was turned over to appellants as their property. If the instruction stood entirely alone, we should regard appellants' criticism of it a serious one; but immediately following the above instruction, and continuing without any apparent break in the context, the court gave the following:

"The parties to such a contract, however, have the right to abrogate or rescind it by mutual consent; if you believe by a preponderance of the evidence that Carstens Bros. and the Saginaw Logging Company mutually agreed that the contract marked 'Exhibit 1,' should be abrogated and all relations under it should be at an end, and that the property in question should be returned to the possession and ownership of Carstens Bros., and if you further believe that such an understanding was completed by the parties, then you may find that the title to the property revested in the plaintiffs, and if you should find by a preponderance of the evidence that the title to the property remained in that condition and was never subsequently parted with by the plaintiffs, then your verdict should be in favor of the plaintiffs, that they are entitled

to the possession of the property described in the complaint."

Thus the court plainly told the jury, almost in the same breath with the instruction first above quoted, that the parties had the right to abrogate or rescind the contract by mutual consent, and that if they believed, from a preponderance of the evidence, that such mutual agreement had been made, and the property returned to the possession and ownership of appellants, and if the appellants never subsequently parted with the title, then they should find for appellants. Thereby it seems to us that the court squarely submitted to the jury all facts involved in the claim of the oral agreement. Touching any oral agreement that may have been made at the time the engine was first bought by appellants and delivered to the logging company, we find among the instructions the following:

"If you find from the testimony that Edward Brady was the agent of Albert E. Hall in the transfer of the property mentioned in plaintiffs' complaint from the Saginaw Logging Company or from M. L. Jose or Thomas Jose to Albert E. Hall, and that said Brady knew the terms and conditions upon which the Saginaw Logging Company, M. L. Jose or Thomas Jose had possession of the property mentioned in plaintiff's complaint from the plaintiffs, and that the plaintiffs were the owners and entitled to the possession of such property at the time, and only consented that the Saginaw Logging Company, M. L. Jose or Thomas Jose should have the temporary use of the property in securing certain saw logs in Clallam county, Washington, then you are instructed that the knowledge of the agent, Edward Brady, was the knowledge of Albert E. Hall, and Albert E. Hall could not be an innocent purchaser of the property, and Albert E. Hall could not transfer a valid title to said property to the defendants, or either of them."

Pertinent to any oral agreement made at either time as claimed, we find the following instruction:

"If you find from a preponderance of the testimony that . . . the property during all of the time belonged to the plaintiffs, and the Saginaw Logging Company, M. L. Jose or Thomas Jose only had a right to the temporary use of the same, and that the Saginaw Logging Company on or about July 7, 1897, agreed to surrender the possession of the property to the plaintiffs, and that after such agreement of surrender M. L. Jose and Thomas Jose, or either of them, secured from the plaintiffs the temporary right to use said property in securing certain saw logs in Clallam county, Washington, . . . no title would pass to Albert E. Hall, and he would have no right to sell or dispose of said property, and any sale by him of said property would be wrongful."

It therefore seems improbable that the jury could have been misled by the portion of the instructions above assigned as error. Although detached expressions in the court's charge, if considered as independent expressions, may possibly be technically erroneous, yet when the instructions as a whole fairly state the law and do not mislead the jury, there is no prejudicial error. *Seattle Gas, etc., Co. v. Seattle,* 6 Wash. 101 (32 Pac. 1058); *Duggan v. Pacific Boom Co.,* 6 Wash. 593 (34 Pac. 157, 36 Am. St. Rep. 182); *McQuillan v. Seattle,* 13 Wash. 600 (43 Pac. 893); *Pronger v. Old National Bank,* 20 Wash. 618 (56 Pac. 391).

The next error assigned is upon the following instruction given by the court of its own motion:

"But if you believe by a preponderance of the evidence that the ownership of the engine, boiler and fittings vested in the Saginaw Logging Company, as outlined in instruction 'A,' and that the written contract between the logging company and Carstens Bros. was never abrogated by mutual agreement, and no return of the property in dispute

was made by virtue of such an abrogation, and that subsequently the Saginaw Logging Company, by its managing partner, transferred the property to Albert E. Hall, in consideration of an antecedent debt, and that Hall in his turn transferred the property to the defendants upon their promise to pay therefor, then your verdict should be in favor of the defendants, that they are entitled to the possession of the property described in the complaint."

It is urged that by the latter portion of the instruction the court told the jury that one partner could take partnership property and use it to pay his individual debts. The court does not so state. The words used are "in consideration of an antecedent debt." There was evidence before the jury that the partnership had expressly assumed to pay $800 upon the debt which was secured by a mortgage upon the aforesaid logging outfit that was being used by the partnership. If there was such an assumption, then $800 of the debt became the obligation of the partnership, and the instruction was pertinent, and not misleading, under the evidence. It is further contended that the instruction is erroneous because under the written contract the engine could not have become the property of the Saginaw Logging Company since it is claimed that the contract was limited to supplies in the way of provisions only. The contract is broad in its terms, however, and covers "all other necessaries required to carry on the logging business," etc. There was evidence to the effect that, acting under the contract, the parties had interpreted it as being broader than appellants now contend, since appellants had furnished axes, saws, grindstones, peevies, chains, and a wire cable. These things seem to have been furnished in pursuance of the written contract, and under the same conditions as the provisions were furnished. We, therefore, think it was proper to

leave it to the jury to determine whether the engine was furnished in the same way.

The next error assigned is upon instruction No. 13 given at the request of respondents, as follows:

"You are further instructed that where it has been once established that there has been a contract of agreement between two or more individuals, and the same is sought to be avoided by any parol agreement, that the written agreement is the best evidence, unless the parol agreement shall be established by a preponderance of the evidence satisfactory to your minds, and that in a case where there is a dispute respecting the change of a written agreement, and you are in doubt regarding the truth, that the burden of proof to establish the change from the written agreement to the oral agreement is upon the person who sets up the oral agreement to defeat the written agreement."

It is urged that the court's reference to the written agreement as the best evidence is tantamount to a comment upon the evidence, and directs the attention of the jury to it, as entitled to greater weight than other evidence. The written agreement was an admitted fact in the case. There was no dispute as to its contents. While the words used by the court may not be the most comprehensive that might have been used, yet we think, from the context, the instruction, as a whole, is the equivalent of saying that when the existence of the written agreement is established, and when it is sought to be avoided by oral evidence, certain stated rules of evidence must apply. It was not sought in this case to dispute the recitals and terms of the written agreement by showing mistake or fraud, and it was in fact the best evidence of its own contents. It was only sought to show by oral testimony that the subject matter in controversy here was not included in the terms of the agreement as it existed. The principal case cited by appellants in support of this assignment of

error is that of *Wheeler v. Baars,* 33 Fla. 696 (15 South. 584). In that case a written statement of account of sales made by the defendant was introduced in evidence. There was positive testimony that the appearances from the paper itself to the effect that it was made out on March 31st, were incorrect, and that it was not in fact made out until after that date. It does not appear to have been a mutually executed written agreement, but a mere statement of sales account made by the defendant; and when it was shown to him upon the witness stand he testified positively that it was incorrect in the particular above named, as did also another witness. The court charged the jury as follows:

"Written declarations made at or before or soon after a transaction, are entitled to greater weight than an oral statement unless the oral statement is of such character as to show that the written statement was made through mistake."

On appeal it was held that in view of the evidence the instruction was erroneous, as it invaded the province of the jury, and told them, in effect, that the written statement made by the defendant was entitled to more weight than his oral testimony. There was in the case a clear dispute as to the correctness of the statements contained in the writing, and the court, in effect, told the jury that, in weighing the evidence concerning the dispute, they should give greater weight to the statements in the writing than to oral statements contradicting them. As before stated, the correctness of the writing in this case referred to in the instruction is not disputed by any evidence, but is fully conceded. The other authorities cited to sustain this assignment of error all bear generally upon the principle that the court shall not direct the attention of the jury to any one class of evidence as being entitled to greater

weight than another. We believe, however, that under the evidence, as it was before the jury in this case, the criticized language of the instruction did not mislead the jury, and did not have the effect to prejudice appellants' rights, for reasons above stated, and that it should not be held to be reversible error.

Objection is also made to the above instruction in that the following words are used in stating the rule of evidence as to the parol agreement: "Unless the parol agreement shall be established by a preponderance of the evidence satisfactory to your minds." It is insisted that to require evidence satisfactory to the minds of the jury is to require more than a preponderance. In *Callan v. Hanson,* 86 Iowa, 420 (53 N. W. 282), an instruction similar in form was given; the words used being as follows: "If from a preponderance of all the evidence you are satisfied," etc. The court said:

"Objection is made to the use of the word 'satisfied' in the sixth instruction. It will be observed that the connection in which the word is used is such as to clearly show that it is used to convey substantially the same thought as 'find' or 'believe.' Thus, 'if from a preponderance of all the evidence you are satisfied,' etc. Clearly the jury could not have understood that the word 'satisfied' was used in any other or different sense than if the word 'believe' had been substituted for the words 'are satisfied.' There can be no good reason for claiming that in the connection in which the word is used it was misleading or erroneous."

We are unable to see any vital distinction between the language used in the Iowa case and that used here. Certainly the effect of the language used here was to tell the jury that, if they "believed" from a preponderance of the evidence, they should so find. They are not left to a belief which may exist in their minds outside of the evidence,

but are referred to a preponderance of the evidence as the source of the belief upon which they should act. Of the authorities cited by counsel upon this point, we note the following: In *Mitchell v. Hindman*, 47 Ill. App. 431, the court was asked to give the following instruction: "The jury are instructed, on behalf of the defendants, that the plaintiff in this case is bound to prove, to the *satisfaction* of the jury, by a *clear* preponderance of the evidence," etc. The court said: "This instruction is defective in the use of the words italicized." This instruction, having been refused by the trial court, was not before the jury, and no further discussion of it was indulged in by the appellate court. In *Lundon v. Chicago*, 83 Ill. App. 208, it was held that an instruction that "the plaintiff must prove her case by a preponderance or great weight of testimony" was misleading. The decision was evidently based upon the idea that the use of the term "great weight" implied much more than a preponderance. In *McGill v. Hall*, 26 S. W. (Tex.) 132, the charge requested by appellees required appellant to establish to the satisfaction of the jury by legal evidence all the material allegations of his cross bill. This was held to be erroneous. It will be observed that no reference whatever is made to preponderance of the testimony, and the jury were simply left to be satisfied from legal evidence. In *Grigg v. Jones*, 26 S. W. (Tex.) 885, the court observed that it is improper to instruct the jury that the case should be proved to their satisfaction. The instruction did not require the jury to base its conclusions upon the evidence. To the same effect is *Feist v. Boothe*, 27 S. W. (Tex.) 33. *Mitchell v. Hindman, supra*, is the only case necessarily in conflict with the Iowa case cited by us, and, as before stated, the instruction in that case was simply asked, and was re-

fused by the trial court, and it was held not error to refuse it.

The next error is assigned upon the following instruction:

"You are further instructed that all contracts, whether written or oral, that have been introduced in this case, are before you for your consideration and interpretation, together with the circumstances and surroundings of the parties, and it is for you to determine from all the circumstances and evidence of the case, the attitude and conduct of the parties, what was the real intention of the parties."

It is urged that the instruction is in violation of the rule that contracts are to be construed by the court. Such is undoubtedly the general rule where there are no ambiguities, no conflicting contracts, and where there are no questions of abrogation or rescission calling for an interpretation. But where there are disputes as to the intentions of the parties to the written agreement, and questions of rescission by disputed oral agreements, then the consideration of the written contract in connection with the oral contracts becomes a question for the jury. In *Warner v. Miltenberger*, 83 Am. Dec. 573 (21 Md. 264), it is said:

"But in our opinion, this question, as it arose in this case, was properly submitted to the jury. In support of this view, we refer to the case of *Wooster v. Butler*, 13 Conn. 309, where the point was carefully examined, and decided in accordance with what we consider the weight of authority. That case involved the construction of a grant, and the court say: 'That the construction of written documents is a matter of law, and is not, in ordinary cases, to be submitted to the jury as a matter of fact, is true; but where the doubt is produced by the existence of collateral and extrinsic facts, not appearing upon the instrument, its consideration ceases to be a matter of mere

legal construction, and the intention of the parties is to be sought for by a recurrence to the state of facts as they existed, when the instrument was made, and to which the parties are to be presumed to have reference. The ambiguity, in such case, is a latent one, which may be explained by parol evidence, and submitted to the jury.' "

See, also, *Ganson v. Madigan,* 82 Am. Dec. (Wis.) 659; *State ex rel. Attorney General v. Conklin,* 34 Wis. 21.

It is next assigned as error that the court, at the request of respondents, instructed the jury to the effect that since appellants had, in their complaint, alleged a demand for the engine, the burden of proof is upon appellants to show that fact. It is urged that since respondents were claiming title to the engine, no demand was necessary. The complaint did not allege that respondents claimed title to the property, and upon the trial appellants introduced both oral and written testimony to show that a demand had been made. The proof was properly in support of the issue tendered by the complaint, but it is urged that, in view of the developments of the case, it was error to give the instruction. The instruction was properly given, as based upon appellants' theory of the case in their complaint, and also in the introduction of their evidence; but in order that the jury might not be misled, in view of the fact that respondents claimed title to the property, the court further instructed them as follows:

"If you find for the plaintiffs in all other respects, the plaintiffs need not prove a demand, provided the defendants are proven by a preponderance of the evidence to be claiming the property as their own."

In view of the last instruction, we think the jury were not misled.

Complaint is also made that the term "fair preponderance" is used in the instruction. In *Hart v. Niagara Fire*

*Ins. Co.,* 9 Wash. 620 (38 Pac. 213, 27 L. R. A. 86), this court refused to hold an instruction containing the words "clear preponderance" as reversibly erroneous. It was held that, in view of other instructions in the case, it was not misleading, and we think it should be so held here.

It is next assigned as error that the court instructed the jury that a written copartnership agreement entered into by parties is presumed to continue until there is competent proof of its discontinuance or dissolution. This instruction related to the copartnership agreement of the Saginaw Logging Company, which was in evidence, and the terms of which were undisputed. It contained no limitation as to time, and is sustained by the following:

"A partnership brings an action on a note; it is contended that the plaintiffs are not partners. It is proved that three years previous they were partners. The presumption is that they continue to be so." Lawson, Presumptive Evidence, 175; citing *Cooper v. Dedrick,* 22 Barb. 516; *Alderson v. Clay,* 1 Stark. 405; *Clark v. Alexander,* 8 Scott N. R. 161.

Further assignments of error, we believe, are sufficiently involved in the foregoing discussion to make it unnecessary to review them. The instructions refused or modified, we think, were covered in other portions of the charge; and we believe that the charge, considered as a whole, fairly stated the law of the case.

The judgment is affirmed.

REAVIS, C. J., and DUNBAR, ANDERS, MOUNT and WHITE, JJ., concur.

FULLERTON, J., concurs in the result.