[No. 17088.   Department One.   September 11, 1922.]

WALTER H. WARNER, *Respondent,* v. CHANNELL CHEMICAL COMPANY, *Appellant.*[1]

CONTRACTS (4, 93-1)—MASTER AND SERVANT (3)—EMPLOYMENT—DURATION—MUTUALITY—CERTAINTY. There is no uncertainty or lack of mutuality in a contract employing a salesman for an indefinite time as long as he increased the sales ten per cent annually, although he was not bound to continue in the service, where there was ample consideration for the covenant to continue the employment at his option.

MASTER AND SERVANT (8)—DISCHARGE—WAIVER. Where a salesman, on notice of an unauthorized cut in his compensation, treated it as a breach of the contract, and continued to perform services while seeking to induce performance or gain a settlement, it cannot be claimed that he waived the breach.

[1]Reported in 208 Pac. 1104.

CORPORATIONS (121)—OFFICERS AND AGENTS—REMOVAL.  Where a contract by a corporation, employing a salesman for a definite time, was entered into in the state of Illinois, the laws of this state authorizing a discharge at the discretion of the company do not apply.

DAMAGES (74, 118)—BREACH OF CONTRACT—LOSS OF PROSPECTIVE PROFITS—EVIDENCE—SUFFICIENCY.  Prospective profits from the loss of commissions on sales are recoverable as estimated with reasonable certainty, by evidence of what the salesman had demonstrated by two full years of experience in his territory, from which it was manifest that he could tell what he could do in the future for a certain length of time with reasonable certainty; but beyond such time, no profits could be recovered.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 3, 1921, upon findings in favor of the plaintiff, in an action on contract, tried to the court.  Modified.

*Joseph B. Lawler* and *Burkheimer & Burkheimer,* for appellant.

*Gates & Helsell,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this action to recover from appellant upon two causes of action; first, for commissions earned under a written contract of employment; and second, for damages flowing from the alleged breach of the contract.  The cause was tried to the court without a jury, resulting in findings and judgment in respondent's favor for $2,313.42, and interest, on the first cause of action, and $11,260 on the second cause of action.

In presenting the case here on this appeal, the appellant does not question the recovery on the first cause of action, but raises six questions, all going to the right of recovery upon the second cause of action. All of these will be considered, but grouped somewhat in the interest of brevity.

It appears that respondent, then being an employee of appellant's in Chicago, on June 12, 1918, entered into the following contract with appellant:

"An agreement made the 12th day of June, 1918, between the Channell Chemical Company, a corporation organized and existing under the Laws of the state of Illinois (hereinafter called the company), of the one part, and Walter H. Warner (hereinafter called the salesman), of the other part.

"Whereby It Is Agreed as Follows:

"1.   The company will employ the salesman and the salesman will act as salesman for the company from June 15th, 1918, until December 31st, 1919, and thereafter until this agreement shall be determined in the manner hereinafter provided.

"2.   During the continuance of this agreement the salesman shall devote the whole of his time to the business of the company and shall use his best endeavors to promote its interest and welfare.   He shall not without permission of a proper officer directly or indirectly deal in any shares of any other company carrying on a similar business, and shall exercise and carry out all orders and duties and shall observe all such directions and restrictions as the officers or any of them may from time to time impose upon him.   He shall be entitled to take two weeks consecutive holidays in each year at a period to be approved by the proper officer and such other holidays not exceeding a total of ten days in any one year as may be approved.

"3.   The salesman shall be entitled by way of remuneration for his services to a commission of 7% on the net amount of goods shipped to his territory, which shall be the states of Oregon and Washington.

"4.   The salesman undertakes and agrees to sell during the remaining months of 1918 an amount equal to the corresponding months in 1917, and to sell during 1919 a total of $120,000 net shipments.   All orders or business received from said territory during the life of this contract shall be credited to the salesman.   And all orders are subject to acceptance by the company. The salesman further undertakes to increase the busi-

ness 10% net in 1920 over 1919 business and 10% each year over the preceding year, and this contract shall continue in full force and effect provided the salesman makes the agreed sales.   In default of such increase it is agreed that the company may dispense with the services of the salesman upon two weeks' written notice, but the absence of such action on the part of the company shall not operate as a waiver of this paragraph but the company may exercise such right at any time thereafter, unless subsequent sales bring up totals to required amount.

"5.   The salesman shall be allowed a drawing account of $150 per week, and all expenses of travel, hotel, etc., shall be borne by the salesman.   This drawing account to be charged to the salesman against his commission account, and final settlement to be made at the end of the year.

"6.   If the salesman shall at any time be incapacitated by illness or otherwise from performing his duties as such for three consecutive months this contract to be void at the option of the company or if he shall in the option of the board of directors be or become in any way unfit either morally or physically to act as salesman the company may by three calendar months' notice in writing put an end to this agreement notwithstanding anything hereinbefore contained.

"7.   The salesman shall send in daily reports, route cards and other data as requested.   The company reserves the right to cancel this contract at the end of any six months' period in each year should the net sales be less than the corresponding period of the previous year.

"8.   The salesman shall come to the home office once each year at a time set by the company and the railroad fare for such trip to Chicago shall be borne by the company.

"9.   All agreements, contracts, understandings, or arrangements which may have been heretofore made or had with reference to the employment of the said party of the second part by the party of the first part,

or with reference to the compensation of the said party of the second part, for or in respect to such employment, are hereby wholly abrogated, discharged, and annulled; it being hereby agreed that this writing constitutes and express the whole agreement of the parties with reference to the employment, and compensation for or in respect to such employment, of the party of the second part by the party of the first part, all promises, undertakings, representations, agreements, understandings, and arrangements with reference to such employment and compensation being herein merged.''

Directly upon the execution of the contract, respondent removed with his family to the territory therein described, making his headquarters at Portland, Oregon, where he opened offices, furnished them at his own expense, purchased an automobile to be used in visiting the trade, expended money in advertising, and generally devoted his time and means to the carrying out of his part under the contract, and this so successfully that he sold nearly $80,000 worth of appellant's products during the last half of the year 1918, thus more than meeting the requirements of the contract for that period. In 1919, he sold upwards of $120,000 worth of such products, and fully met the requirements of the contract for that year. In 1920, respondent's sales were fully meeting the prescribed amount for that year, when in April, appellant sent to him a draft of a new contract, the same in terms as the one under which he was working, except that it required him to sell $200,000 worth of goods in his territory during the year 1920. Respondent refused to execute the proposed new contract, advising appellant that he had fulfilled the terms of the existing contract, that it was in full force, and that he was working thereunder. On July 16, 1920, appellant's president wrote respondent, stating that he had ordered respondent's commission

cut from seven per cent to five per cent, beginning July 1, 1920. Respondent refused to accept this arbitrary change of the contract. Letters and telegrams were exchanged, and finally in a letter from appellant dated September 2, 1920, respondent was informed that, "the cut in your commission to five per cent has been made a matter of record in this office as of July first. Mr. Channell emphatically states that his decision must stand." Respondent elected to treat this as a breach of the contract, and shortly thereafter brought this suit.

Appellant's first and second contentions are that the contract is void for uncertainty and is lacking in mutuality. The uncertainty is thought to exist in the period of time over which the contract shall or may exist, and the lack of mutuality in that respondent was not, by the terms of the contract, bound to remain in appellant's employ after December 31, 1919, and if appellant should be held bound for a longer period of time, there would be no reciprocal consideration therefor.

Where, as here, the parties have tried, evidently in good faith, to express their intentions, the courts will not lightly declare the contract void for lack of certainty, but will rather endeavor to discover the true meaning and intent of the parties and give effect thereto. *Faucett v. Northern Clay Co.*, 84 Wash. 382, 146 Pac. 857. Here we had a contract in which, in the beginning, respondent assumed all the risk, and so far as he performed up to the time of the breach, appellant was the chief gainer. Respondent took over what appears to have been an undeveloped, or, at least, a partially developed territory, introduced and greatly extended the sale of appellant's products, and the terms of the contract plainly convey an intention that

by so doing he should earn the right to proceed so long as he complied with its conditions. Not only is there no uncertainty, but the obligation (fully performed up to the time of the breach) to increase the sales was ample consideration for appellant's covenant to continue the employment at respondent's option, even though he was not himself bound to so continue. The benefits to him of continuing if he succeeded in meeting the conditions of the contract, were so self-evident that no covenant on that subject was required or could have been more effective. Mutuality, as applied to a contract, means consideration, and, as we have seen, there was here, expressed in the contract and actually passed by performance, ample consideration for the optional right to continue. A contract to be binding need not be reciprocal as to each and every distinct covenant contained therein.

"This clause was but one of several in one complete contract, and to make each separate obligation in such a contract binding on the one party there need not be a special promise directed to that particular obligation on the part of the other." *Parks v. Elmore,* 59 Wash. 584, 110 Pac. 381.

See, also, Page on Contracts, § 565; Williston on Contracts, § 140.

Appellant next contends that the evidence fails to show a breach of the contract, or, if so, that respondent waived the same by continuing to work under the modified agreement. A study of the record has convinced us that the evidence does not warrant either contention. Without detailing the evidence, it is sufficient to say that when appellant, without any complaint as to the work done, or claim of its insufficiency, arbitrarily sought to reduce respondent's compensation in violation of the terms of the contract, respond-

ent had a right to, and did, treat that act as a breach of the contract. He made his attitude plain at all times, and if he did any work during the time he was seeking by correspondence to induce appellant to recede from its position, or afterwards, it was only such work as would protect appellant's interests, and it was done either in the hope that appellant would recede, or in anticipation that appellant would send a representative to Portland to make settlement with him.

Respondent was permitted to amend his complaint, when the case was called for trial, so as to allege that the contract sued upon was executed in the state of Illinois, and that the laws of Illinois differ from the laws of this state with reference to contracts for employment by a corporation. Proof was offered to sustain this allegation. We are, therefore, not concerned with the rule in this state as announced in *Llewellyn v. Aberdeen Brewing Co.*, 65 Wash. 319, 118 Pac. 30, Ann. Cas. 1913B 667, and subsequent cases. Not only was there proof by a witness learned in the law of Illinois, but there is cited to us the case of *Trustees of Soldiers' Orphans' Home v. Shaffer*, 63 Ill. 243, in which the supreme court of Illinois says:

"The language of the act is, that the trustees may remove any officer or employee if the interests of the institution require the removal. This would confer the power of removal, if there was no special contract for the service of the employee for a definite time. But it does not give the right to discharge a servant, without any dereliction on his part, when he has been engaged for a fixed period. If a corporation desires to retain the right of removal at its discretion, it must not bind itself by a special contract. The law will not permit it to disregard the terms of its contract, but it must be governed by the same rules as is a private person."

We come now to appellant's last contention, which perhaps is the most difficult of all to satisfactorily answer, and that is that the loss of commissions or profits has not been shown, and cannot be shown, with sufficient certainty to warrant a recovery. It must be admitted that the evidence upon this subject consists of a showing of what was done while the contract was in force, and opinion evidence as to what respondent could have done after the time of the breach, had he been permitted to continue under the terms of the contract as written. While more opinion evidence might have been offered, yet that would not change the situation, as we find no contradiction of that which was given. We are committed to the doctrine that, in such a case as this, prospective profits may be the basis of recovery if they can be estimated with reasonable certainty. *Bogart v. Pitchless Lumber Co.,* 72 Wash 417, 130 Pac. 490; *Bromley v. Heffernan Engine Works,* 108 Wash. 31, 182 Pac. 929; *Nelson v. Davenport,* 108 Wash. 259, 183 Pac. 132; *Florence Fish Co. v. Everett Packing Co.,* 111 Wash. 1, 188 Pac. 792.

At the time of the breach, respondent had actually demonstrated what he could do in his territory by two full years' experience, and with his knowledge of conditions in his territory and of the product to be sold, it is manifest that he could tell with reasonable certainty the amount of business he could do in the immediate future, and it is equally manifest that there must come a time of changing conditions, as to which he could not foresee with any reasonable degree of certainty. Further than that, the contract provides:
"The salesman (respondent) further undertakes to increase his business ten per cent in 1920 over the 1919 business, and ten per cent each year over the preceding year, and this contract shall continue in force and

effect, provided the salesman makes the agreed sales. In default of such increase, it is agreed that the company may dispense with the services of the salesman upon two weeks' written notice. . . ." And, in the nature of things, there must come a time when the territory would be fully canvassed and supplied, and when further increase in sales might be, if not wholly impossible, such as could be made only at a prohibitive cost. It remains then to determine how far into the future we may follow the opinion of one familiar with all the conditions. The case was tried below in July, 1921, and the evidence given at that time could be, and apparently was, reasonably certain as to the time which had passed, and as to the whole of the calendar year 1921, and the trial court found that respondent could have fulfilled the conditions as to sales during the years 1920 and 1921. In this we agree. The trial court properly considered the contract to mean that, if its terms were met in 1921, it would thereby be extended to cover the year 1922, and, we think, properly held that he was not justified in finding (although the opinion evidence was to that effect) that respondent could have sold $169,000 worth of goods in 1922, thereby extending the contract for the year 1923. But he further held that, in 1922, respondent could have equalled his 1921 sales. This, it seems to us, is as much a speculation as it would have been to have held that the sales could have been increased. While, if respondent lived and kept his health, he would undoubtedly have made sales in 1922, yet it seems to us that that time was too far in the future and its possible conditions too much dependent upon what might happen to permit anyone to say with reasonable certainty what sales could have been made. Since the prospective sales for 1922 could not be determined with reasonable

certainty, no recovery on account thereof can be allowed. It appears that the trial court found that respondent would have earned net $5,380 during the year 1922, and that amount is included in the judgment. To that extent, therefore, the judgment as entered is excessive.

The judgment will be modified by reducing the amount from $13,712 to $8,332. In all other respects it will stand. affirmed.

Appellant will recover its costs in this court.

PARKER, C. J., FULLERTON, and BRIDGES, JJ., concur.