[No. 23079.   Department One.   September 29, 1931.]

WM. T. JONES *et al, Respondents,* v. SHELL OIL COM-
PANY, *Appellant.*[1]

[1]Reported in 3 P. (2d) 141.

*Hyland, Elvidge & Alvord,* for appellant.
*Yantis & Brodie,* for respondents.

MITCHELL, J.—This action was brought by Wm. T. Jones and wife against the Shell Oil Company, a corporation, to recover damages consisting of lost profits on account of the breach of a contract to furnish gasoline for sale at a gasoline station operated by the plaintiffs. The first cause of action was for lost profits that would have been made on gasoline; the second, on oil; and the third, on cigars, tobaccos, candies, etc., all between the dates of May 21, 1929, and December 6, 1929. There was a verdict for the plaintiffs on each cause of action. The defendant has appealed from a judgment on the verdict.

Respondents were the owners of the service station and the real property upon which it was situated, in Pierce county, and entered into a written contract dated May 28, 1928, by which they leased the same to the appellant, or its predecessor in interest, for a period of five years commencing August 1, 1928. The lease was signed by the lessors and the lessee. At the same time and as a part of the same transaction, the same parties entered into a written contract designated "License and Consignment Contract" by which the appellant granted to the respondents as its agents the license to use and enjoy the premises mentioned in the lease, for five years from August 1, 1928, and to operate the same as a service station "solely for storing and dispensing gasoline of the company and oils

and greases supplied by the company." Gasoline was to be furnished on consignment and handled by respondents as agents, on which they were to have a commission of four cents per gallon. By the terms of the agreement, respondents were to

" . . . exclusively buy from the company and keep in stock for sale at the service station under the company's name adequate quantities of such lubricating oils, greases and other petroleum products as are marketed by the company."

This contract was also signed by the appellant and the respondents. Operations were conducted under the contracts until a change in the license and consignment contract, as follows:

"William T. Jones,                    Feb. 1, 1929.
"Lakeview, Wash.
"Gentlemen:
"Referring to License and Consignment Contract between this Company and yourselves dated May 28, 1928.
"(1) The retail price established and specified by this company for gasoline under paragraph 5 of said contract, continues to be 20½c (Twenty & One Half) cents per gallon.
"(2) In view of present conditions, you may wish to have the contract suspended: If such is your desire, we are willing to suspend the same until further notice to you from us, upon the understanding that during the period of suspension you shall be licensed to use the premises for the sale of petroleum products supplied by us, and that your purchase from us of all of your requirements of petroleum products will be at the following prices:
"For gasoline; our tank wagon price as posted at our depot at Tacoma, Wash. at time of delivery.
"For products other than gasoline, the price will be as contemplated by said contract;
"and that the suspension of the contract will terminate and the contract again go into force upon notice from

us to that effect. If you wish the contract to be suspended upon the foregoing terms, please sign the request on the copy of this letter and return it to us.

"Yours truly,

"SHELL OL COMPANY

"By E. L. Clay

"Request:

"We request that the contract above referred to be suspended upon the terms stated in Paragraph 2 of the foregoing letter.          Wm. T. Jones."

Thereafter, the appellant furnished and was promptly paid for all gasoline and petroleum products ordered by the respondents until May 21, 1929, from which date until December 6, 1929, notwithstanding repeated and persistent orders for a sufficient supply of those things for the station, a greatly reduced amount only was furnished by the appellant, who, during all such time, was fully aware of the fact that respondents were not sufficiently supplied for their trade. All contracts and business relations between the parties were cancelled and concluded on December 6, 1929, at the instance of the appellant exercising its rights to do so under provisions of the contract.

Appellant contends first, that, after the contract of February 1, 1929, there was no mutuality of contract between the parties—that thereafter appellant was not compelled to furnish nor respondents to buy. It is a fact that it did supply, but not enough; and it is a fact that respondents purchased, but not as much as they wanted and needed. Appellant's argument in this respect involves a consideration of the fact that similar relations had existed between these parties, in the operation of this same service station, for a number of years prior to the lease dated May 28, 1928; it involves a consideration of all the provisions of the lease and of the license and consignment contract, both of which are too lengthy to be set out

herein; and it involves also the terms of the contract of February 1, 1929, above set out in full. The respondents had given a lease to the appellant of several acres of land, all they had at that place, on which was situated their home and the service station where they and their family lived and were engaged solely in the business of operating the service station. The appellant had supplied all petroleum products needed and ordered during all those years and respondents had handled none other. Significantly in this respect, one clause of the written lease provided that the appellant, lessee, should pay five dollars per month for the premises

" . . . to be adjusted to equal an amount equivalent to two cents for each and every gallon of Shell gasoline purchased during the month for each and every month during the term of this lease."

It is difficult to see how, under all the surrounding facts and circumstances, and a reasonable consideration of the written contracts as they existed between the parties from May to December, 1929, it could be held otherwise than that the appellant was to furnish and the respondents to buy gasoline and petroleum products as needed at the service station. Clearly, there was both consideration and mutuality.

That there were violations of the contract on the part of the appellant, which resulted in damages by way of lost profits on gasoline and petroleum products in excess of the amounts awarded by the verdict, was shown, in our opinion, by evidence entirely sufficient to take the case to the jury, under the rule in this state pertaining to the question of damages in such cases. For a long time, commencing a number of years prior to the period involved in this action, respondents had continuously operated a Shell station at this location under contract with appellant or its prede-

cessor. The station was well located on the Pacific highway and constituted an established, well known business. Pretty reliable records, or accounts, of sales of gasoline and oil from month to month during all those years were testified to and compared. Respondents, about the time in question, adopted a plan or price of gasoline that caused their sales to rapidly increase above normal for a month or more before the 21st day of May, 1929, of which appellant was familiar, and these sales and prospects, including the approach of the seasonal summer trade in gasoline and oil along this highway, were testified to and compared with other years and seasons of business.

The proof on the part of the respondents showed with reasonable certainty the profit made on each gallon of gasoline and oil that was sold, and that, during the period mentioned in the complaint, the appellant refused to supply the station with more than about one-half of the gasoline ordered and needed, although there was no claim or pretense of inability on the part of the appellant to supply all that was ordered. The amount of the verdict for lost profits was well within the proof, especially so since no additional force or facilities were needed to handle the larger prospective trade than was maintained to handle the goods actually supplied by the appellant, and, at the same time, there was no proof of any legal justification on the part of the appellant for the breach of its contract.

In *Warner v. Channell Chemical Co.,* 121 Wash. 237, 208 Pac. 1104, in discussing the question of damages consisting of the loss of prospective profits occasioned by the breach of a commission contract, it was said:

"We come now to appellant's last contention, which perhaps is the most difficult of all to satisfactorily answer, and that is that the loss of commissions or profits has not been shown, and cannot be shown, with suf-

ficient certainty to warrant a recovery. It must be admitted that the evidence upon this subject consists of a showing of what was done while the contract was in force, and opinion evidence as to what respondent could have done after the time of the breach, had he been permitted to continue under the terms of the contract as written. While more opinion evidence might have been offered, yet that would not change the situation, as we find no contradiction of that which was given. We are committed to the doctrine that, in such a case as this, prospective profits may be the basis of recovery if they can be estimated with reasonable certainty. *Bogart v. Pitchless Lumber Co.,* 72 Wash. 417, 130 Pac. 490; *Bromley v. Hefferman Engine Works,* 108 Wash. 31, 182 Pac. 929; *Nelson v. Davenport,* 108 Wash. 259, 183 Pac. 132; *Florence Fish Co. v. Everett Packing Co.,* 111 Wash. 1, 188 Pac. 792.

"At the time of the breach, respondent had actually demonstrated what he could do in his territory by two full years' experience, and with his knowledge of conditions in his territory and of the product to be sold, it is manifest that he could tell with reasonable certainty the amount of business he could do in the immediate future, . . ."

In the case of *Seeley v. Peabody,* 139 Wash. 382, 247 Pac. 471, adhered to by an *En Banc* decision, 141 Wash. 696, 250 Pac. 469, in discussing the question of damages for the destruction of one's business, it was said:

"We think it may be said, speaking generally, that, when one injures another by some unwarranted act, the measure of the damage of the one so injured will not be measured by the courts with any great degree of nicety, when the circumstances are such as to not permit of such measurement. Our decisions in *Bogart v. Pitchless Lumber Co.,* 72 Wash. 417, 130 Pac. 490; *Seidell v. Taylor,* 86 Wash. 645, 151 Pac. 41, and *Loutzehiser v. Peck,* 89 Wash. 435, 154 Pac. 814, contain observations in harmony with this general view touching the proof and measurement of such damages."

Other cases to the same effect are *Wright v. Duthie & Co.*, 118 Wash. 564, 204 Pac. 191; *Bowman v. Helser*, 143 Wash. 397, 255 Pac. 146; *Beeson Brothers v. Chambers*, 155 Wash. 564, 285 Pac. 433; *Wick Company v. DuBarry*, 159 Wash. 380, 293 Pac. 447.

■ The alleged cause of action for loss of profits in the sale of cigars, tobaccos, candies, etc., was not established. The respondent or anyone for him knew nothing reasonably definite about the amount of stock or the cost of such goods at any time; nor was there any testimony as to the selling price of any such articles. What little testimony there was upon the subject was decidedly vague and uncertain, consisting of nothing more than a guess. Appellant's motion to dismiss as to this cause of action should have been granted.

■ In one instruction, the jury was told, in substance, to construe any ambiguity in the contracts against the appellant because appellant drew them. This was error, in our opinion. The language in the contracts is plain. Counsel for respondents do not refer to any that is ambiguous.

■ Error is assigned upon the giving of an instruction as follows:

"You are further instructed that all contracts, whether written or oral, that have been introduced in this case are before you for your consideration and interpretation together with the circumstances and surroundings of the parties and it is for you to determine from all the circumstances and evidence of the case, the attitude and conduct of the parties, what was the real intention of the parties."

It is alleged that the instruction is violative of the rule that contracts are to be construed by the court. The instruction is identical with the one found in *Carstens v. Earles*, 26 Wash. 676, 67 Pac. 404, and in support of its applicability in this case respondents

rely on that case and *Durand v. Heney,* 33 Wash. 38, 73 Pac. 775. That is, the general rule is admitted by respondents, but they argue that this case falls within an exception to that rule, as was the situation in the cases cited, and that therefore the instruction was proper.

But those cases involved ambiguities, conflicting contracts or questions of rescission by disputed oral agreements, none of which are found here. The causes of action here are upon breach of written contracts that are plain. No oral contract is relied on or pled by either party to the action, and therefore the cases relied on by respondents are not applicable. The giving of the instruction constituted error.

■ Error is assigned upon what is contended to be a substantial conflict in other instructions. The jury was told that

"The evidence in support of the profits and their loss must be clear and free from taint of speculation or conjecture. Unless the evidence that the plaintiff would have made the profits claimed or sustained the losses claimed meets with the requirements of that rule, then you will not allow the plaintiff any sum of money by way of damages at all."

Then the jury was immediately instructed as follows:

"You are instructed that in considering the first, second and third causes of action herein the first question for you to determine is whether or not there was a contract between the parties as contended for by plaintiffs. The second question to determine is whether or not there was a breach of the alleged agreement between the parties by the defendant. If you find that there was a breach, then the next question for you to determine would be the amount which you would allow, if any, and this amount would be such as you would agree upon according to the preponderance of the evidence introduced in this case. By reason of the fact that plaintiffs' claimed damage is based upon esti-

mated sales, it would be impossible for you to estimate the amount with mathematical accuracy; you will simply do the best you can according to a fair preponderance of the evidence which has been introduced and allow such sum anywhere from one cent up to the full amount claimed by the plaintiffs, if you will allow anything.''

Upon careful consideration, these instructions should not be taken to be confusing. There is no conflict in them. By our cases, the testimony introduced by the respondents in support of their two causes of action was of a kind sufficiently ''clear and free from taint of speculation or conjecture'' as to justify a recovery, so that the jury, believing that testimony, would be satisfied in that respect under the first of these instructions complained of. Thereafter, it was entirely proper and advisable to instruct that, as to the amount to be allowed, if any, it should be determined by the general rule of the preponderance of the evidence, although, as frequently happens, in different kinds of cases similar to this one the amount could not be calculated or ascertained with mathematical accuracy.

Other assignments presented by appellant are, in our opinion, without substantial merit, or have been indirectly disposed of by what has already been said herein, or relate to things that will not occur upon a new trial.

The judgment is reversed, and the cause remanded with directions to dismiss the alleged cause of action relating to the sale of cigars, tobaccos, candies, etc., and, because of erroneous instructions mentioned, to grant a new trial as to the causes of action relating to lost profits in the sale of gasoline and oil.

TOLMAN, C. J., MAIN, PARKER, and HOLCOMB, JJ., concur.