[No. 29538. Department Two. June 28, 1945.]

CHARLES R. HOLDEN, *Respondent*, v. SCHAFER BROS. LUMBER & SHINGLE COMPANY, *Appellant.*[1]

[1]Reported in 160 P. (2d) 537

*Lenihan & Ivers,* for appellant.

*Chavelle & Chavelle,* for respondent.

SIMPSON, J.—This action was instituted by plaintiff to recover damages occasioned by the refusal of defendant to comply with the contract to furnish lumber to plaintiff for the purpose of manufacturing grain doors.

The complaint contained two causes of action. In the first cause of action it was alleged that on or about the 10th day of March, 1943, the parties entered into an oral contract, by the terms of which defendant promised and agreed to furnish to plaintiff certain lumber to be manufactured by defendant between the dates of the contract and January 1, 1944; that plaintiff agreed to pay and take delivery thereof; and that plaintiff then deposited with defendant the sum of one thousand dollars to secure performance of the agreement. It was further alleged that within a brief time after April 20, 1943, defendant willfully and wrongfully terminated the contract and took over and filled

many of plaintiff's orders for grain doors. The complaint then set out as a fact that defendant had returned only eight hundred seventy dollars of the one thousand dollars deposited by plaintiff to secure his performance of the contract.

The second cause of action realleged by reference the allegations of the first cause of action relative to the making of the contract and its violation and then alleged that the failure and refusal of defendant to comply with the terms of the contract had caused damages to plaintiff in the sum of eighty thousand dollars.

Defendant, in its answer, denied the allegations contained in the complaint. The cause, tried to a jury, resulted in a verdict in favor of plaintiff in the sum of fifteen thousand dollars. Defendant's motions for a judgment notwithstanding the verdict and for a new trial were denied by the court. Thereafter judgment was entered upon the verdict. Defendant appealed.

The assignments of error are: (a) Improper admission of evidence during the trial; (b) overruling appellant's motion to dismiss; (c) denial of the motion for a directed verdict; (d) failure of the court to grant the motions for judgment notwithstanding the verdict or for a new trial; and (e) in the giving to the jury instructions Nos. 13, 15, and 16.

Following we set out the essential facts from the evidence which were most favorable to respondent. During the month of February, 1942, respondent was asked by a man named Elmer Wertz if someone could be found who would manufacture grain doors and stated that he (Wertz) could and would sell them to the railroad companies. Respondent replied that he could manufacture the doors and then went to Aberdeen, where he rented a small plant and instructed some employees in the method of manufacturing the doors. At that time the demand for grain doors was urgent and amounted to about two cars each week. The price at first was small, but increased to seventy-three cents during the latter part of 1942. Respondent received notice that the price was about to advance to one dollar and four-

teen cents each. It is a fact that they reached that price in February, 1943.

During the month of January, 1943, respondent called upon Ed Schafer, sales manager of appellant company, showed him some contracts he had with the railroad companies to manufacture doors, and asked to purchase the needed lumber from appellant. He then explained the whole situation relative to the manufacture and sale of grain doors. Two or three days after the first meeting the sales manager told respondent to "go ahead, it was o. k."

Respondent's evidence on this phase of the case was as follows:

" . . . 'There is a lot of money involved in this, you know,' and I said, 'Yes, there is.' He said, 'How do you want to pay for it?' I said, 'Any time on sight, I would like to take two percent.' Wertz took two percent on me. He said, 'That's fine, we'll have to have a deposit from you to secure this contract.' I said, 'That's fine, how much do you want?' He said, 'Oh, say, one thousand dollars, that would be all right.' I said, 'You can make it five thousand just as easy. Its going to amount to a lot of lumber.' He said, 'No, one thousand is all right, I guess, you won't run away or leave town,' so I sent the one thousand dollars over."

The check, dated March 10, 1943, was delivered to and cashed by appellant company. Within a week after the delivery of the check appellant delivered the first material under the contract. During this period of time respondent had leased another plant to care for his expanding business.

March 25, 1943, appellant sent to respondent a statement which reads:

"Acknowledgment of Order. SCHAFER BROS. LUMBER & SHINGLE Co., A Division Of: Schafer Bros. Logging Co. Mills at Montesano and Aberdeen, Wash. Capacity 1,000,-000 Feet Daily. Aberdeen, Wash. Buyer's No. Our No. 3410-R. Date, March 25, 1943. SHIP TO: You will call for same. INVOICE TO: Chas. Holden, 510 Summer Ave. AT: Aberdeen, Wash.

"This order is accepted subject to, and we are not to be held responsible for delays caused by unavoidable accidents, strikes, riots, stoppage of labor or other causes inter-

fering with, obstructing or blocking the usual routes of transportation and other causes beyond our control, and may be rescinded by us after acceptance for any of said causes.

"FOB MILL. 1″ No. 4 Fir, $14.50 M′; 2″ No. 4 Fir, $12.50 M′; Shim Stock, $10.00 load; Cull Lumber, $5.00 load. TERMS: 2% 10 days.

"If the price of any items listed hereon exceed the maximum prices authorized by OPA price schedules, it is unintentional on our part. Anyone who notices such error is requested to notify us so that proper correction may be made.

"CHECKED By: fg, da. SCHAFER BROS. LUMBER & SHINGLE Co. By (signed) Ed Schafer."

Respondent also testified that it was agreed that the contract should last until the end of the year, 1943. Respondent secured lumber under the contract for about one month, at the end of which time appellant refused to make further deliveries. Respondent made every effort to secure other material from other sources, but was unsuccessful. The result was that he could not fill orders he received from the railroad companies.

The operator of respondent's plant testified that someone from appellant company examined respondent's plant, took measurements of the benches in the shop, the height and length of the grain doors, and also interviewed some of respondent's employees. Among the visitors were Carl Schafer and appellant's master mechanic, Otto Granstrom. Some of respondent's employees were induced to leave respondent and work in the Schafer grain door manufacturing plant, which had been set up after the date of the contract with respondent. The men in these shops were paid for piecework and were told by the representatives of the appellant that appellant would have a large supply of lumber and that respondent would have a very small amount of material.

Charles R. Stickney, a certified public accountant, testified that the net profit of respondent on each grain door was 31.83 cents.

From April 2, 1943, to January 1, 1944, Wertz placed with appellant orders for 343,193 doors. Some of these orders

were taken from respondent. In addition, the evidence discloses that the Union Pacific Railroad Company placed several independent orders with appellant.

The prospective profits were arrived at by computing the profits which respondent would have received had he manufactured the doors completed by appellant after it had violated its contract and had filled the orders given, or which would have been given, to respondent.

■ Appellant introduced evidence which contradicted that given by respondent and his witnesses. It is not necessary to set out that evidence, however, for the reason that there was substantial evidence introduced to support respondent's contention, and we must therefore abide the verdict of the jury in so far as the facts are concerned.

■ Appellant takes the position that the court should have granted either the motion to dismiss, presented at the close of respondent's evidence, or its motion for judgment notwithstanding the verdict. This contention is based on the ground that respondent failed to introduce sufficient evidence to establish the existence of a contract. There is no merit in this argument. The evidence as we have pointed out reveals that respondent and the sales manager of appellant corporation agreed that all of certain grades of lumber manufactured by appellant during the year, 1943, should be delivered to respondent so that he could manufacture a large number of grain doors. One thousand dollars was paid to appellant to guarantee performance of the contract by respondent, and a considerable amount of lumber was delivered to him in accordance with the terms of the contract. The facts to which we have referred were sufficient to prove the making and partial performance of an enforcible contract.

It is next argued that the court erred in failing to grant the motion for a new trial. Appellant's reasons are that, in the introduction of evidence and in the submission of the case to the jury, the court applied an improper measure of damages and that the court allowed the admission of improper evidence which created prejudice on the part of the jury against appellant. The trial court's theory concerning

the proper measure of damages is reflected in its instruction No. 13, which reads:

"You Are Instructed that if you should find that the lumber and material required by the contract was not furnished and, further, if furnished the plaintiff could have conducted his business at a profit, then the plaintiff is entitled to recover such profit as you might find the plaintiff would have made."

In support of its contention, appellant cites Rem. Rev. Stat., § 5836-67 [P.P.C. § 852-3]; 46 Am. Jur. 802, Sales, § 677; *Menz Lbr. Co. v. McNeeley & Co.*, 58 Wash. 223, 108 Pac. 621, 28 L. R. A. 1007; *Cannon v. Oregon Moline Plow Co.*, 115 Wash. 273, 197 Pac. 39; *Sunset Shingle Co. v. Northwest Electric & Water Works*, 118 Wash. 416, 203 Pac. 978.

The statute to which appellant refers reads:

"(1) Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery.

"(2) The measure of damages is the loss directly and naturally resulting, in the ordinary course of events, from the seller's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods, at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

The cases just cited lay down the general rule that the measure of damages for the failure to sell goods contracted for is the difference between the contract price and the value of the commodities at the time of the demand and the refusal to perform the contract. That general rule cannot be questioned. However, it does not apply to the facts present in the case at bar. The provisions of the statute do not limit recovery to the difference in price as contended for by appellant. This is apparent when subsection (2) is read.

The rule relative to prospective profits was announced by the court in *Federal Iron & Brass Bed Co. v. Hock,* 42 Wash. 668, 85 Pac. 418. In that case the court stated:

"Ofttimes in the breach of a contract of this character, the only damages sustained are those of future profits. These may be of a substantial character in contemplation of law, and such as the injured party should be entitled to recover from the party who has without justification broken the contract. The recovery must, of course, be limited to the amount which from all the surrounding conditions may be deemed to have been reasonably certain had the breach not occurred."

Other cases in which this question has been considered are: *Bogart v. Pitchless Lbr. Co.,* 72 Wash. 417, 130 Pac. 490; *Bromley v. Heffernan Engine Works,* 108 Wash. 31, 182 Pac. 929; *Florence Fish Co. v. Everett Packing Co.,* 111 Wash. 1, 188 Pac. 792; *Warner v. Channell Chemical Co.,* 121 Wash. 237, 208 Pac. 1104; *Jones v. Shell Oil Co.,* 164 Wash. 543, 3 P. (2d) 141; *Quist v. Zerr,* 12 Wn. (2d) 21, 120 P. (2d) 539; *Hole v. Unity Petroleum Corp.,* 15 Wn. (2d) 416, 131 P. (2d) 150.

The holding of the cited cases is that prospective profits of an established business may be recovered if these profits can be ascertained with reasonable certainty. It is not necessary that they be proven with exact accuracy. They are to be determined by the jury from all the tangible evidence in the case, taking into consideration all of the surrounding circumstances and the situation of the respective parties to the contract. In the instant case it seems clear that respondent had established a growing business in the city of Aberdeen and had secured orders for a large number of grain doors, the filling of which would have brought to him a profit greatly in excess of the amount found by the jury.

Appellant's officers and agents knew the facts when the contract was made and then deliberately, with an evident intent to enrich appellant corporation at the expense of respondent, refused to comply with the terms of the agreement. Respondent, under the circumstances, was entitled

to recover prospective profits. The evidence upon this phase of the case was ample to warrant the jury in returning the verdict for respondent.

The evidence of which appellant complains was concerning the incidents relative to the visits of appellant's agents to the plant of respondent. The admission of the evidence was proper under the circumstances in this case. It showed the deliberate intent of the officers of appellant corporation to violate the terms of the contract. In any event, the admission of the evidence was largely in the discretion of the trial court.

The contention of appellant that instructions Nos. 13, 15, and 16 were erroneous was without foundation. Instruction No. 15 was favorable to appellant for the reason that it explained that one is excused from the performance of a contract if that performance is prevented by the action of the adverse party. The court applied the rule to respondent and appellant alike.

Instruction No. 16 was general in nature in that the court explained that if the jury found that the contract had been violated by appellant, such damages should be allowed respondent as were shown by a fair preponderance of the evidence. The instructions were entirely proper and fitted the conditions of the parties as shown by the evidence.

The judgment is affirmed.

BEALS, C. J., BLAKE, ROBINSON, and MALLERY, JJ., concur.